Gail Ann JONES, Plaintiff and Appellant,

v.

PRINGLE & HERIGSTAD, P.C., Defendant and Appellee.

Civil No. 950335.

Supreme Court of North Dakota.

April 25, 1996.

Steven L. Latham of Wheeler Wolf, Bismarck, for plaintiff and appellant.

Jan M. Sebby and James E. Nostdahl (argued) of Pringle & Herigstad, P.C., Minot, for defendant and appellee.

SANDSTROM, Justice.

Gail Ann Jones appeals from a district court judgment dismissing her complaint against Pringle & Herigstad, P.C. (Pringle). Jones contends Pringle & Herigstad overcharged her for legal services performed. Concluding the contract for legal services was unambiguous—and complied with—we affirm.

## I

In November 1989, Jones lost her left arm and suffered other injuries in an accident at work. She hired Pringle to represent her in an action against the manufacturers of the equipment that she claimed caused the injury. She also filed a claim with the North Dakota Workers Compensation Bureau and received workers' compensation benefits.

Under the terms of her agreement with Pringle, Jones agreed to pay Pringle costs plus one-fourth of the recovery if legal action was not begun, and costs plus one-third of the recovery if legal action was necessary. The agreement was prepared by Lee Balerud, the attorney at Pringle who represented Jones in the prosecution of her claim. Jones and Balerud signed the agreement.

After entering into the agreement with Pringle, Jones notified the Bureau she intended to bring an action against the party she thought to be responsible for her injuries. In her notice, she agreed to act "as trustee for the Bureau for its subrogated interest." In December 1991, Balerud entered into an agreement with the Bureau to represent its subrogated interest in Jones' action. Under this agreement, attorney fees and costs were to be "prorated in accordance with N.D.C.C. § 65–01–09," which governs the Bureau's subrogation rights when Bureau claimants seek recovery for their injuries from third persons.

In August 1991, Jones sued the manufacturers. A settlement was reached in December 1992, and in January 1993, Jones received $1,705,974.

Pringle used this gross settlement amount to calculate its fees. Pringle first calculated the estimated net settlement as follows:

| | |
|---|---|
| Total settlement amount: | $1,705,974.00 |
| Minus Bureau benefits paid as of December 1992: | 247,260.42 |
| Minus costs advanced: | 21,551.79 |
| Equals estimated net settlement: | 1,437,161.79 |

Pringle set Jones' fee at one-third of the estimated net settlement: $479,053.93. Pringle then disbursed the settlement proceeds as follows:

| | |
|---|---|
| Total settlement amount: | $1,705,974.00 |
| Paid to Jones: | 971,967.25 |
| Paid to Bureau: | 179,144.08 |
| Itemized as follows: | |
| Benefits paid by Bureau as of January 1993: | 254,952.82 |
| Minus attorney fees paid by Bureau: | 63,738.20 |
| Minus Bureau share of costs: | 12,070.54 |
| Paid to Pringle: | 554,824.17 |
| Itemized as follows: | |
| Fee paid by Jones: | 479,053.93 |
| Fee paid by Bureau: | 63,738.20 |
| Costs paid by Bureau: | 12,070.54 |
| Balance in account: | 38.50 |

In March 1993, the Bureau issued a resolution suspending Jones' benefits "until such future benefits would be equal to or exceed the sum of $448,525.64." The Bureau calculated the suspended benefit amount as follows:

| Total settlement: | $1,705,974.00 |
|---|---|
| Minus claimant's share (50%): | 852,987.00 |
| Equals Bureau's subrogated interest (50%): | 852,987.00 |
| Minus total benefits expended by Bureau: | 254,952.82 |
| Equals total benefits to be suspended: | 598,034.18 |
| Less Bureau share of attorney fees at 25%: | 149,508.54 |
| Equals net benefits to be suspended: | 448,525.64 |

Jones objected to Pringle charging a 33⅓ percent fee on the portion of her settlement equal to the benefits suspended by the Bureau, when the Bureau only credited her with a 25 percent attorney fee on the suspended benefits. Pringle waived Jones' share of the costs, $12,070.54, in an attempt to settle the fee dispute. Jones then began this action against Pringle, alleging that Pringle was "entitled to attorneys fees only at a rate of 25 percent for the Bureau's subrogation interest including the suspended benefits."

Following an August 1995 bench trial on Jones' claim, the trial court concluded:

"I.

"The Retainer Agreement entered into by the Plaintiff and the Defendant was not ambiguous.

"II.

"The amount deducted by the Defendant from the settlement for its attorney's fees was correct and proper pursuant to its Retainer Agreement with the Plaintiff.

"III.

"The amount that Workers Compensation ultimately determined to be 'suspended benefits' had no effect on the Retainer Agreement between the Plaintiff and the Defendant."

Judgment was entered in favor of Pringle. Jones appeals.

The district court had jurisdiction under N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–27–01.

II

Jones first argues N.D.C.C. § 65–01–09 caps attorney fees on the portion of a recovery equal to the benefits suspended by the Bureau when a workers' compensation claimant recovers from a third party for injuries and the Bureau suspends the worker's benefits.

■ Interpretation of a statute is a question of law and fully reviewable by this Court. *Kallhoff v. N.D. Workers' Comp. Bureau*, 484 N.W.2d 510, 512 (N.D.1992). When we interpret a statute, our primary objective is to determine the legislature's intent. *Adams County Record v. GNDA*, 529 N.W.2d 830, 833 (N.D.1995). In seeking legislative intent, we look first to the language of the statute and give it its "plain, ordinary and commonly understood meaning." *State v. Pippin*, 496 N.W.2d 50, 52 (N.D.1993); N.D.C.C. § 1–02–02. When a statute's language is clear and unambiguous, "the letter of the statute cannot be disregarded under the pretext of pursuing its spirit." *Flermoen v. Workers Compensation Bureau*, 470 N.W.2d 220, 221 (N.D.1991).

■ The portion of N.D.C.C. § 65–01–09 dealing with attorney fee percentages requires:

"The bureau shall pay attorney fees to the injured employee's attorney from the bureau general fund as follows:
"1. Twenty percent of the subrogation interest recovered for the bureau when legal action is not commenced.
"2. Twenty-five percent of the subrogation interest recovered for the bureau when action is commenced and settled before judgment.
"3. Thirty-three and one-third percent of the subrogation interest recovered for the bureau when recovered through judgment."

■ Suspended benefits are not mentioned in N.D.C.C. § 65–01–09, but this Court examined the Bureau's practice of suspending benefits in *Blaskowski v. North Dakota Workmen's Comp.*, 380 N.W.2d 333 (N.D.1986). In *Blaskowski*, this Court observed "[t]he purpose of the Bureau's subrogation rights is to reimburse the fund, to the

extent possible, at the expense of the persons at fault." *Blaskowski* at 335. This Court acknowledged the Bureau could suspend benefits equal to its statutory subrogation interest—fifty percent of the injured claimant's third-party recovery—in order to thoroughly protect its subrogation interest. *Blaskowski* at 335–36. Suspended benefits are not funds "recovered for the [B]ureau" under N.D.C.C. § 65–01–09 because "the Bureau does not automatically receive one-half of every recovery.... The Bureau only receives one-half of a recovery if it pays benefits which add up to one-half of the recovery." *Blaskowski* at 336. The Bureau recovers the suspended benefit amount only if and when the claimant incurs future expenses equaling the amount of benefits suspended. *Blaskowski.*

Because suspended benefits are not funds recovered for the Bureau but rather funds potentially recoverable for the Bureau, the Bureau is not required by N.D.C.C. § 65–01–09 to pay attorney fees outright on the suspended benefit amount. Instead, the Bureau accounts for attorney fees when calculating net suspended benefits. The injured claimant who actually receives the third-party recovery pays attorney fees on the recovery, including the portion of the recovery equivalent to the benefits suspended by the Bureau.

The attorney fee language in N.D.C.C. § 65–01–09 is unambiguous: the *Bureau* must pay attorney fees on funds recovered for the Bureau based on given percentages. The statute does not regulate attorney fees payable by injured claimants on funds they recover due to the efforts of their private attorneys. The Bureau internally accounts for attorney fees on suspended benefits by using the percentages required by N.D.C.C. § 65–01–09; this practice does not impose a legal obligation on private attorneys to follow the same procedure in calculating their attorney fees. Only the legislature could impose such a requirement, and it has not done so here. We conclude N.D.C.C. § 65–01–09 requires the Bureau to pay set attorney fees when funds are recovered for the Bureau

from third parties through personal injury actions; the statute does not regulate the fees private attorneys may charge clients other than the Bureau in such actions.

### III

Jones next argues Pringle had no right to charge her more than a twenty-five percent fee on the portion of her settlement equal to the Bureau's suspended benefits, absent her explicit authorization of a higher fee. This argument hinges on Jones' claim that Pringle had a duty to advise her of the impact of its agreement to represent the Bureau's subrogated interest and how this could affect Jones' interests and her recovery. Jones specifically alleges she was not informed how the Bureau's suspension of benefits could affect her ultimate recovery.

### A

■ Jones points to the North Dakota Rules of Professional Conduct to support her claim that Pringle had a duty to inform. Specifically, she cites N.D.R.P.C. 1.7 and 1.5, which deal with conflicts of interest and contingent fee agreements. Jones insinuates Pringle violated these rules in its dealings with her because it also represented the Bureau's interest in the action.[1] Clearly, attorneys have a duty to obey the rules of professional conduct. *See* N.D.R.P.C. 8.4. The remedy when attorneys do not fulfill this duty, however, is professional discipline under the North Dakota Rules for Lawyer Discipline. *See* Part III, N.D.R.L.D.; *see also Reems v. St. Joseph's Hosp. and Health Center,* 536 N.W.2d 666, 671 (N.D.1995) (discipline, not reversal, is appropriate remedy for violation of Code of Judicial Conduct). Jones has not cited any statute, rule, or case which allows rescission or reformation of an otherwise valid contract as remedy for an attorney failing to fulfill a duty under the N.D.R.P.C.

### B

Jones claims, however, absent information from Pringle about the impact of suspended

---

1. When an injured worker brings a third-party claim, N.D.C.C. § 65–01–09 requires the injured worker to act as trustee for the Bureau's subrogation interest. The statute, by implication, seems also to require the injured employee's at-

torney to represent the Bureau's subrogation interest because it provides for the payment of costs and attorney's fees to the "injured employee's attorney."

benefits on her ultimate recovery, there was no agreement to pay an attorney fee higher than that accounted for by the Bureau on the suspended benefit portion of her settlement. Jones essentially challenges the existence of a contract on this point, arguing the contract as it exists is incomplete.

 Whether a contract exists is a question of fact for the trier of fact. *Osterman–Levitt v. MedQuest, Inc.,* 513 N.W.2d 70, 72 (N.D.1994); *Hirschkorn v. Severson,* 319 N.W.2d 475, 478 (N.D.1982). Likewise, the trier of fact determines whether a contract is intended to be a complete, final, and binding agreement. *Jerry Harmon Motors, Inc. v. First Nat. Bank & Trust Co.,* 472 N.W.2d 748, 752 (N.D.1991). Accordingly, our review of these questions is governed by the "clearly erroneous" standard of N.D.R.Civ.P. 52(a). *Hirschkorn* at 478.

 The trial court found Jones entered into an agreement to pay legal fees at a set percentage rate to Pringle for Pringle's work in prosecuting her personal injury claim. This finding is not clearly erroneous considering Jones' testimony admitting she entered into the agreement, evidence in the record showing Jones sought Pringle's representation, and the parties acting in accordance with the contract for more than three years. Jones did not claim the contract was incomplete or lacking consent until after Pringle's services were rendered and her fees came due.

 Fully explaining fee agreements to clients is always good practice for attorneys, but it is not always possible for attorneys to predict every conceivable future ramification of an agreement, especially in complex fields such as workers' compensation law. In her brief, Jones states Pringle was still "confused" at the time of the trial about the Bureau's subrogation interest and its impact on Jones. This fact is indicative of the complexity of this area of law and the difficulty in predicting what might occur in the course of representation. We agree with the trial court that the agreement between Jones and Pringle is binding, even though Jones may not have known of all its possible consequences. *See Lange v. Cusey,* 379 N.W.2d

775, 779 n. 2 (N.D.1985) ("When the mutual assent of the parties to contract is objectively evident from the writing the contract will be binding, regardless of the subjective misunderstanding of one of the parties.").

## C

 Ultimately, when parties enter a contract, they make their own law, and the duties between them are established by the contract. *See Roen Land Trust v. Frederick,* 530 N.W.2d 355, 357 (N.D.1995). The contract between Jones and Pringle determines the duties of the parties here. Jones essentially argues the contract is ambiguous because the impact of Pringle's later agreement with the Bureau to represent the Bureau's interest in the action is not discussed in the fee agreement between Jones and Pringle.

 "The construction of a written contract to determine its legal effect is a question of law for the court to decide." *Hart Const. v. American Family Mut. Ins.,* 514 N.W.2d 384, 388 (N.D.1994). Whether or not a contract is ambiguous is also a question of law. *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.,* 541 N.W.2d 432, 434 (N.D.1995). We interpret contracts to give effect to the mutual intentions of the parties, N.D.C.C. § 9–07–03, and for written contracts, we determine the parties' intention from the writing alone, if possible. N.D.C.C. § 9–07–04. "[I]f the language of the contract is clear and unambiguous, and the intent is apparent from its face, there is no room for further interpretation." *Roen Land Trust.*

In the retainer agreement, Jones retained and employed Pringle to represent her in the handling of her claim against those "thought to be liable" for her injuries. Jones agreed:

"[T]o pay my attorneys for their services rendered pursuant to this retainer the sum of one-fourth of any amount recovered upon said claim by settlement prior to the institution of legal action, and one-third of any amount recovered upon said claim if legal action is required, together with all reasonable and necessary costs and expenses, if any, paid or incurred by my attorneys for me in connection with the preparation, prosecution and handling of said claim and cause of action."

■ The mutual intentions of the parties are clear from the face of the contract. Jones wanted Pringle to represent her; Pringle wanted a fee in return. The method of determining the fee is set out clearly. Under the "clear and unambiguous" terms of the contract, Pringle is due a fee for its representation, calculated according to the formula in the contract.

■ That Pringle entered into a later written agreement, memorializing the statutory duty to represent the Bureau's subrogated interest in this matter and reciting that attorney fees and costs would be prorated as provided in N.D.C.C. § 65–01–09, has no bearing on our interpretation of the contract between Pringle and Jones. A contract is ambiguous when rational arguments can be made in support of contrary interpretations of the contract language. *Kief Farmers Co-op. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 32 (N.D.1995). Jones has not provided any "rational arguments" to support an interpretation of the contract contrary to the plain language interpretation. At best, Jones argues something is missing from her agreement with Pringle. This argument, however, goes to completeness, not interpretation. We conclude the contract is not ambiguous and Jones is bound to pay a fee according to its terms.

### IV

We affirm the judgment of the district court.

VANDE WALLE, C.J., NEUMANN, J., and MICHAEL O. McGUIRE, District Judge, concur.

MICHAEL O. McGUIRE, District Judge, sitting in place of MESCHKE, J., disqualified.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.