2001 ND 187

**LENTHE INVESTMENTS, INC., a corporation, Plaintiff and Appellant,**

v.

**SERVICE OIL, INC., a corporation and Steven Dirk Lenthe, Defendants and Appellees.**

No. 20010085.

Supreme Court of North Dakota.

Dec. 5, 2001.

Bruce H. Carlson, McNair, Larson & Carlson, Ltd., Fargo, ND, for plaintiff and appellant.

Joseph A. Turman, DeMars & Turman, Fargo, ND, for defendants and appellees.

MARING, Justice.

[¶ 1] Lenthe Investments, Inc., appeals from a judgment dated January 22, 2001, holding the parties entered into an enforceable agreement and declaring the terms of the lease. We affirm.

I

[¶ 2] Lenthe Investments, Inc., ("Lenthe Investments") is a corporation owned by Reuben and Betty Lu Lenthe which owns a number of parcels of commercial property. One such parcel of property is located on Main Avenue in Fargo, North Dakota. Lenthe Investments leases a portion of this parcel to Kroll's Kitchen, Inc., ("Kroll's") which operates a restaurant on the premises. The other portion of the parcel is leased to Service Oil, Inc., ("Service Oil") which operates a Stamart gas station and convenience store on the premises. Service Oil is a corporation owned by Reuben Lenthe and Steven Dirk Lenthe, who is Reuben and Betty Lu's son.

[¶ 3] Beginning in 1994, Betty Lu's health began to deteriorate. In 1998, Reuben's health began to deteriorate as well. In May of 1999, Susan Lenthe, who is Reuben and Betty Lu's daughter, filed a petition in the district court for Clay County, Minnesota, seeking appointment of a general guardian for Reuben and Betty Lu. Steven Dirk Lenthe opposed the petition. A hearing on the petition was held on August 26, 1999.

[¶ 4] At the beginning of the hearing, Susan, joined by Reuben and Betty Lu's son, Roger Drew Lenthe, made a motion for summary judgment on the petition for guardianship. The court recessed to consider the motion. During the recess, the parties negotiated an agreement. After the recess, the parties discussed the agreement with the trial court. The hearing was adjourned, and the parties finalized the terms of the agreement in a document entitled "Stipulation and Agreement."

[¶ 5] As part of the Stipulation and Agreement, Susan Lenthe and Roger Drew Lenthe would be appointed co-guardians of the estate of Reuben Lenthe, and Reuben's interest in Service Oil would be sold according to the terms and conditions of a prior agreement between Reuben and Steven Dirk Lenthe. Additionally, the parties agreed "Lenthe Investment, Inc. shall enter into a lease with Service Oil, Inc. for that portion of the property commonly known and referred to as Stamart Service Station located at 2903 Main Avenue, Fargo, ND at a rental rate per square foot the same as and to the extent appropriate on and for the same length of term and other terms as Lenthe Investment, Inc. presently has with Kroll's Kitchen, Inc." The agreement was submitted to the trial court, and an order substantially incorporating the terms of the agreement was entered on September 17, 1999.

[¶ 6] Subsequent to the entry of the order, Lenthe Investments sent a proposed lease to Service Oil. Service Oil rejected this lease because it required Service Oil to pay rent for the area under its

fuel canopies. On January 24, 2000, Lenthe Investments filed a complaint seeking a declaratory judgment interpreting the provision of the order regarding the lease. After a bench trial, the trial court found "[o]n August 26, 1999, the parties entered into an enforceable agreement concerning the lease of the property occupied by Stamart at 2903 Main Avenue, Fargo, North Dakota." Furthermore, the court concluded "[t]he terms of the lease are the same as the terms entered into between Lenthe Investment and Kroll's Kitchen on June 29, 1999, and require Stamart to pay the same rental per square foot as Kroll's Kitchen pays under its lease." Additionally, the trial court concluded the "agreement does not include a requirement that Service Oil, Inc. pay a per foot rental charge for the area occupied by its gasoline and diesel canopies." A judgment reflecting these findings and conclusions was entered on January 22, 2001, and Lenthe Investments appealed.

II

[¶ 7] Whether a contract exists is a question of fact. *See Stout v. Fisher Indus., Inc.*, 1999 ND 218, ¶ 11, 603 N.W.2d 52; *Jones v. Pringle & Herigstad, P.C.*, 546 N.W.2d 837, 842 (N.D.1996). Likewise, "whether a contract is intended to be a complete, final, and binding agreement" is also a question of fact. *Jones*, at 842. We review questions of fact under the clearly erroneous standard. *Id.* "Under that standard, a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Lonesome Dove Petroleum, Inc. v. Nelson*, 2000 ND 104, ¶ 15, 611 N.W.2d 154.

[¶ 8] Lenthe Investments argues the provision of the guardianship order regarding the lease was merely an agreement to agree and, therefore, was not an enforceable contract between the parties. Generally, once an agreement is merged into a judgment, "it is interpreted and enforced as a final judgment of the court, not as a separate contract between the parties." *Sullivan v. Quist*, 506 N.W.2d 394, 399 (N.D.1993). However, because both parties relied exclusively on contract principles in their arguments before the trial court and this Court, we analyze the issues presented under contract principles. *See Gravseth v. Farmers Union Oil Co. of Minot*, 108 N.W.2d 785, 789 (N.D.1961) (jury instructions not challenged by specifications of error become the law of the case).

[¶ 9] "To create an enforceable contract, there must be a mutual intent to create a legal obligation." *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 434 (N.D.1995). "The parties' mutual assent to a contract is determined by their objective manifestations of contractual assent." *Moen v. Meidinger*, 1998 ND 161, ¶ 6, 583 N.W.2d 634. "It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties." *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D. 1977).

[¶ 10] Lenthe Investments argues that the stipulation at issue is an unenforceable agreement to agree because the phrase "to the extent appropriate," as used in the stipulation, "begs for interpretation, and suggests that the parties would negotiate which terms of the Kroll's lease would be appropriate for the Stamart lease."

Generally, an agreement to agree is unenforceable because its terms are so indefinite it fails to show a mutual intent to create an enforceable obligation. An

agreement to agree in the future which is not sufficiently definite to enable a court to give it an exact meaning is not an enforceable obligation. However, an agreement to agree is enforceable if its terms are reasonably certain and definite.

*Stout*, 1999 ND 218, ¶ 12, 603 N.W.2d 52 (citations and internal quotation marks omitted).

[¶ 11] The definiteness of terms has bearing on both the parties' intent to be bound and on the finality of the agreement. 1 *Corbin on Contracts* § 2.8, at 131 (Rev. ed.1993). The issue of whether the parties intended the stipulation to be a contract or merely an agreement to negotiate the terms of a lease is a question of fact. *See id.* at 146 ("A transaction is complete when the parties mean it to be complete. It is a mere matter of interpretation of their expressions to each other, a question of fact.").

[¶ 12] The evidence at trial established the Kroll's Kitchen lease was in existence at the time of the guardianship hearing. This lease was incorporated by reference into the stipulation to provide the essential terms of the lease between Lenthe Investments and Service Oil. The evidence also established both parties were familiar with the terms of the Kroll's Kitchen lease, the amount of rent Kroll's paid under its lease, and the size of the building occupied by Kroll's and Service Oil. Furthermore, the final version of the stipulation was composed after hours of negotiating between the parties. Additionally, the trial court had before it Susan Lenthe's recitation of her understanding of the stipulation at the guardianship hearing:

> SUSAN LENTHE: The new rental agreement for the property at 2901 Main Avenue in Fargo, which also includes 3001 and 3041, is the railroad property behind that same parcel, it would be the same $1,000.00 a month or $12,000.00 for the year, plus Lenthe Investment will also pay the real estate taxes on that property.
>
> Then the third part of the agreement is that for the rental at the Stamart location there at 2903 Main Avenue, their rent will be based on the same dollars per square foot that is being paid by the Kroll's Kitchen in the other half of the building. Agreed?
>
> MR. DEMARS: Sounds right, Your Honor.
>
> THE COURT: Okay
>
> MR. NORDHOUGEN: She did a much better job than I did.
>
> THE COURT: With that clarification, then, Susan, is that your understanding of the total agreement that's been reached this morning?
>
> SUSAN LENTHE: Yes, and I'm pleased.
>
> THE COURT: And you've had enough time to talk that over with Mr. Klinger this morning?
>
> SUSAN LENTHE: Yes.

Under these circumstances, the trial court's finding that the stipulation constituted an enforceable contract between Lenthe Investments and Service Oil was not clearly erroneous.

### III

[¶ 13] Lenthe Investments also argues even if the stipulation is an enforceable contract, we should remand this case because the trial court did not determine how the percentage rent provision contained in the Kroll's Kitchen lease would be implemented in the Service Oil lease.

[¶ 14] The construction of a written contract to determine its legal effect is a question of law. *See Jones*, 546 N.W.2d at 842.

Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone if possible. A contract must be construed as a whole to give effect to each provision, if reasonably practicable. We construe contracts to be definite and capable of being carried into effect, unless doing so violates the intention of the parties. Unless used by the parties in a technical sense, words in a contract are construed in their ordinary and popular sense, rather than according to their strict legal meaning.

If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent. Whether or not a contract is ambiguous is a question of law. An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the language in question.

*Lire,* 541 N.W.2d at 433–34 (citations omitted).

[¶ 15] The provision of the guardianship order at issue in this case provides "Lenthe Investment, Inc. shall enter into a lease with Service Oil, Inc. for that portion of the property commonly known and referred to as StaMart Service Station located at 2903 Main Avenue, Fargo, North Dakota, at a rental rate per square foot the same as and to the extent appropriate on and for the same length of term and other terms as the lease Lenthe Investments, Inc. presently has with Kroll's Kitchen, Inc. for 2901 Main Avenue, Fargo, North Dakota." This provision does not distinguish between base rent or percentage rent. We conclude the language of the phrase "at a rental rate per square foot the same as and to the extent appropriate on and for the same length of term and other terms as the lease Lenthe Investments, Inc. presently has with Kroll's Kitchen, Inc.," indicates the parties intended Service Oil to pay the same base rent per square foot as Kroll's Kitchen, as well as the same percentage rent per square foot as Kroll's Kitchen. Therefore, the trial court's conclusion that "[t]he terms of the lease are the same as the terms entered into between Lenthe Investment and Kroll's Kitchen on June 29, 1999, and require Stamart to pay the same rental per square foot as Kroll's Kitchen pays under its lease," necessarily means Lenthe Investments must pay the same base rent per square foot as Kroll's Kitchen, as well as the same percentage rent per square foot as Kroll's Kitchen.[1]

1. Determining the amount of rent requires only a mathematical calculation. *Cf. Metcalf v. Security Intern. Ins. Co.,* 261 N.W.2d 795, 802–03 (N.D.1977) (plaintiff's claim for interest was not uncertain so as to deny the claim where the interest was "ascertainable by calculation in accordance with the proper construction of the contractual agreement existing between Metcalf and Security"). According to the trial court's findings, Kroll's Kitchen occupies 6,579 square feet of the building while Service Oil occupies 3,275 square feet of the building. The trial court found Kroll's Kitchen pays $3,750 per month, or $45,000 per year, in base rent and a percentage rent of 10% of its annual sales over $700,000. Based on these findings, Kroll's Kitchen pays $6.84 per square foot per year in base rent ($45,000/6,579 square feet). Therefore, according to the contractual agreement existing between Service Oil and Lenthe Investments, Service Oil would pay a base rent of $22,401.00 per year ($6.84 × 3,275 square feet). The percentage rent Service Oil would pay is determined in the same manner. For example, if Kroll's Kitchen pays percentage rent in a given year of $10,000, the percentage rent it would pay per square foot that year is $1.52 ($10,000/6,579 square feet). Therefore, under the terms of the contract, the amount of percent-

We conclude the trial court did not err in its interpretation of the contract.

### IV

[¶ 16] We, therefore, affirm the judgment of the trial court.

[¶ 17] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

age rent Service Oil would pay that year is $4,978.00 ($1.52 × 3,275 square feet).