# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 75

Tarryl Joyce, individually, and as Special
Administrator of the Estate of Vera Mitchell,
aka Vera Delores (Kilen) Joyce, aka Vera Delores
Joyce, aka Vera Delores Kilen, aka Vera K. Mitchell,
aka Vera J. Mitchell, aka Vera Joyce Mitchell and
aka Vera D. Mitchell, and First International Bank
& Trust, Personal Representative of the Estate of
Vera Mitchell                                    Plaintiffs and Appellants

      v.

Steven R. Joyce,                                  Defendant and Appellee

### No. 20190224

Appeal from the District Court of Mountrail County, North Central Judicial
District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Dan D. Plambeck (argued), and Peter E. Karlsson (on brief), Moorhead, MN,
for plaintiff and appellant Tarryl Joyce.

Timothy G. Richard (on brief), Fargo, ND, for plaintiff and appellant First
International Bank & Trust.

Brian W. Hankla, Minot, ND, for defendant and appellee.

**VandeWalle, Justice.**

[¶1]  Tarryl Joyce appealed from a district court judgment granting Steven Joyce's motion for dismissal of Tarryl Joyce's claims against him for actions he took while acting as Vera Mitchell's attorney-in-fact. We affirm.

I

[¶2]  This litigation involves a dispute over mineral interests located in Mountrail County and other property owned by Vera Mitchell and her estate. On October 10, 2006, Mitchell executed a durable power of attorney appointing her son, Steven Joyce, as attorney-in-fact. Mitchell executed a last will and testament the same day. In 2008, due to dementia and declining mental health, Steven Joyce moved Mitchell from an assisted living facility in Grand Forks, North Dakota, to a memory care facility in Carrolton, Texas, near his home.

[¶3]  On September 16, 2011, Steven Joyce, as Mitchell's attorney-in-fact, executed and recorded a quit claim deed transferring all of Mitchell's mineral interests to himself. Steven Joyce also wrote several checks to himself and others and made purchases using Mitchell's Wells Fargo checking account as Mitchell's attorney-in-fact. Additionally, Tarryl Joyce alleges Steven Joyce made investments and purchased property using Mitchell's assets.

[¶4]  Vera Mitchell died on December 19, 2017. Tarryl Joyce was appointed by the district court for Mountrail County as special administrator of Mitchell's estate. Tarryl Joyce requested an accounting from Steven Joyce of Mitchell's assets, specifically including Mitchell's mineral interests. Steven Joyce told Tarryl Joyce that he had sold Mitchell's mineral interests and that Mitchell's assets were depleted due to costs incurred for Mitchell's stay at the memory care facility.

[¶5]  In March 2018, Tarryl Joyce commenced suit against Steven Joyce claiming the quit claim deed transferring Mitchell's mineral interests to Steven Joyce was invalid, Tarryl Joyce was entitled to an accounting of

1

Mitchell's estate from Steven Joyce, and Steven Joyce breached his duty of trust and loyalty. Steven Joyce answered and counterclaimed. In October 2018, Tarryl Joyce moved to amend her complaint to assert a claim for exemplary damages and for partial summary judgment. Tarryl Joyce's appointment as special administrator was terminated due to conflicts of interest. First International Bank & Trust was appointed to be the personal representative of Mitchell's estate.

[¶6] On November 20, 2018, the parties attended mediation and reached a settlement agreement. The settlement agreement read in its entirety:

> The parties agree that the matter entitled Tarryl Joyce individually and First International Bank & Trust as Personal Representative of the Estate of Vera Mitchell, plaintiffs, v. Steven R. Joyce, defendant, is settled on the following basis:
>
> a. The defendant shall pay to Tari Joyce the sum of $600,000 in accordance with the payment schedule below. Defendant shall convey to Tari Joyce an undivided one-half interest in all mineral interests.
>
> b. This settlement is a full and complete resolution of all of the issues between the parties in this action.
>
> c. This settlement is a binding agreement between the parties. The terms of the settlement shall be kept confidential by the parties.
>
> d. It is understood by the parties that the mediator has no duty to protect their interests; further, that the agreement may adversely affect their rights; and the parties should consult an attorney before signing this agreement, if they are uncertain of their rights. The parties understand that certain additional mutually acceptable documents shall be required.
>
> 1. $15,000 by Dec 1, 2018
> 2. $35,000 upon dismissal of the Civil Action
> 3. $200,000 on or before Jan 15, 2019.

2

> 4.  $50,000 per year for 7 years beginning January 15, 2020 and continuing on the 15th day of each January thereafter until January 15, 2026.
> 5.  2018 suspended royalty payments shall be paid to Tari Joyce
> 6.  All payments shall be secured by 2nd mortgage against Defendant's house and Defendant's one-half interest in the mineral interests.

The settlement agreement was dated and was signed by Tarryl Joyce and Steven Joyce and their attorneys.

[¶7] Soon after the parties agreed to the settlement, Tarryl Joyce's attorney contacted a Texas attorney about obtaining a second mortgage on Steven Joyce's home as security. The Texas attorney informed Tarryl Joyce's attorney that a second mortgage against Steven Joyce's home would be unenforceable under Texas law. After learning the second mortgage may be invalid under Texas law, Tarryl Joyce's attorney sent an email to Steven Joyce's attorney informing him of the issue. Steven Joyce's attorney replied by letter expressing Steven Joyce's willingness to perform the obligations set forth in the settlement agreement. The letter further stated:

> [T]o the extent the above items may not be accepted or resolved, the Settlement Agreement signed at the time of the mediation does provide that the settlement was a full and complete resolution of all of the issues between the parties and that the settlement was a binding agreement, and it would be Steve's intent to enforce the terms of the Settlement Agreement signed by the parties.

Tarryl Joyce's attorney replied by stating there was no binding settlement agreement because an essential term of the agreement—the second mortgage—was unenforceable.

[¶8] Because Steven Joyce believed the parties had reached a valid and enforceable settlement, he moved the district court for an "Entry of Order for Judgment of Dismissal." In her answer brief, Tarryl Joyce argued the settlement agreement was unenforceable because the second mortgage was invalid under Texas law. Tarryl Joyce's argument was based on the

3

information she received from the Texas attorney. Tarryl Joyce also stated she made Steven Joyce and his attorney aware of the situation and the parties were involved in ongoing negotiations.

[¶9]   On March 26, 2019, the district court ordered the calendar control clerk to schedule and notice a motion hearing "at which time the Court [would] hear oral arguments on Steven's Motion for Entry of Order for Judgment of Dismissal; Tarryl's Motion for Partial Summary Judgment; and Tarryl's Motion to Amend Complaint." Neither party requested a hearing, and after the court required a hearing, neither party requested to introduce evidence at the hearing.

[¶10] A hearing was held on May 5, 2019. The three pending motions were argued by each party's respective attorney. Besides having been told by a Texas attorney that the second mortgage was invalid under Texas law, Tarryl Joyce provided no additional evidence that the second mortgage was invalid under Texas law and did not cite or provide the court with the applicable provisions of Texas law. The only evidence Tarryl Joyce provided indicating the second mortgage was a material term of the settlement agreement was that the second mortgage was specifically negotiated. Tarryl Joyce did not present any evidence of the value of the second mortgage, the value of the mineral interests that also acted as security, or the extent of the negotiations involving the second mortgage. In addition to arguing the case should not be dismissed because the settlement was not a binding agreement, Tarryl Joyce questioned the procedural posture of Steven Joyce's motion for dismissal.

[¶11] No briefs were requested by the court nor did the parties request to file briefs after the May 5 hearing. Having been presented with no evidence other than conclusory, hearsay statements from a Texas attorney that the second mortgage was invalid under Texas law, the court found the settlement agreement to be a binding contract.  On May 23, the district court issued an order granting Steven Joyce's motion to dismiss and entered judgment.

[¶12] On appeal, Tarryl Joyce argues there exists a mutual mistake of fact between the parties as to the validity of the second mortgage requiring

4

rescission of the settlement agreement. Tarryl Joyce further argues the district court erred in holding a hearing when neither party requested a hearing, and erred by declining to inform itself on Texas law and by not requesting the parties inform the court on Texas law. Tarryl Joyce also argues Steven Joyce's motion for dismissal was procedurally improper in a number of ways.

## II

[¶13] Tarryl Joyce argues that the district court erred by holding a hearing and granting Steven Joyce's motion to dismiss, which Tarryl Joyce contends was improperly noticed, improperly served, and procedurally defective.

## A

[¶14] Tarryl Joyce contends the district court erred by holding a hearing when no party requested a hearing. Under N.D.R.Ct. 3.2(b): "After reviewing the parties' submissions, the court may require oral argument and may allow or require evidence on a motion." A plain reading of Rule 3.2(b) allows the district court to require a hearing be held even if no party requests a hearing. *See Anton v. Anton*, 442 N.W.2d 445, 446 (N.D. 1989) (interpreting previous version of Rule 3.2 containing substantively similar language as the current version of Rule 3.2). A district court's decision whether to require a hearing is discretionary, which we review for an abuse of discretion. *See State v. Krous*, 2004 ND 136, ¶ 10, 681 N.W.2d 822.

[¶15] In opposing Steven Joyce's motion to dismiss, Tarryl Joyce argues the settlement agreement was unenforceable because of the parties' mutually mistaken belief that a material term of the settlement agreement was valid. Provided with Tarryl Joyce's opposition to Steven Joyce's motion to dismiss and her reasons for opposing the motion, the district court did not abuse its discretion by requiring a hearing.

## B

[¶16] Tarryl Joyce argues Steven Joyce's motion to dismiss was improperly noticed because he did not file and serve a reply brief. Under N.D.R.Ct. 3.2(a)(2), "The moving party may serve and file a reply brief within seven days

5

after service of the answer brief." Tarryl Joyce concedes that Steven Joyce was under no obligation under Rule 3.2(a)(2) to file and serve a reply brief. However, Tarryl Joyce contends that because Steven Joyce did not file and serve a reply brief, she was "unfairly surprised" at the May 5 hearing that Steven Joyce rebutted her argument concerning the validity of the second mortgage in the settlement agreement.

[¶17] Prior to the hearing, the parties' attorneys had exchanged letters concerning the validity of the second mortgage under Texas law. After Tarryl Joyce's attorney initially raised the issue of the validity of the second mortgage, Steven Joyce's attorney sent a reply letter stating "the settlement was a full and complete resolution of all of the issues between the parties and that the settlement was a binding agreement"; "it would be Steve's intent to enforce the terms of the Settlement Agreement signed by the parties"; and Steven Joyce was willing to perform his obligations set forth in the settlement agreement. Steven Joyce did not withdraw his motion to dismiss after the validity of the second mortgage had become an issue or after the parties had discussed the issue. Rather, he maintained that the settlement agreement was valid and enforceable. Tarryl Joyce was provided sufficient notice that Steven Joyce believed the settlement agreement was a valid, final, and enforceable agreement. Tarryl Joyce was not "unfairly surprised" or prejudiced by Steven Joyce's decision not to file and serve a reply brief, which he was under no obligation to do.

III

[¶18] We next consider whether the district court was required to inform itself of Texas law or erred by not requesting counsels' aid in obtaining the applicable Texas law. To address Tarryl Joyce's arguments, we must interpret N.D.C.C. § 31-10-03, the controlling authority on the issue, in light of its intended purpose. Interpretation of statutes is a question of law, which we review de novo on appeal. *State v. Chacano*, 2012 ND 113, ¶ 10, 817 N.W.2d 369 (citing *State v. Ebertz*, 2010 ND 79, ¶ 8, 782 N.W.2d 350).

[¶19] Under N.D.C.C. § 31-10-03:

> Every court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States. Such court may inform itself of the laws in such manner as it may deem proper and may call upon counsel to aid it in obtaining such information. The determination of such laws shall be made by the court and not by the jury and shall be reviewable.

This Court has decided a limited number of cases involving § 31-10-03. We have held that when a party offers no proof of the law of another state and does not ask the court to take judicial notice thereof, the law of other states will be presumed to be the same as the law of North Dakota. *See State v. Red Arrow Towbar Sales Co.*, 298 N.W.2d 514, 516 (N.D. 1980); *Schnoor v. Meinecke*, 77 N.D. 96, 102, 40 N.W.2d 803, 807-08 (1950); *Haggard v. First Nat'l Bank of Mandan*, 72 N.D. 434, 444, 8 N.W.2d 5, 9 (1942). Additionally, we have held a copy of the foreign law need not be in evidence before it is judicially noticed. *City of Mandan v. Mertz*, 399 N.W.2d 298, 299 (N.D. 1987); *Walter v. N.D. State Highway Comm'r*, 391 N.W.2d 155, 158 (N.D. 1986).

[¶20] Section 31-10-03 is a modified version of the Uniform Judicial Notice of Foreign Law Act. North Dakota Century Code provisions that are part of a uniform statute "must be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." N.D.C.C. § 1-02-13. The intended purpose of the Uniform Act was to eliminate the common law rule that foreign laws must be formally proved and could not be judicially noticed. C. T. Drechsler, Annotation, *Uniform Judicial Notice of Foreign Law Act*, 23 A.L.R.2d 1437 § 1 (originally published in 1952). The Uniform Act includes provisions identical to those in § 31-10-03 stating that "[e]very court of this state shall take judicial notice of" the laws of other states and that "[t]he court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information." *See* Drechsler, *supra*, § 2. Because the applicable language in § 31-10-03 is identical to the language of the Uniform Act, we may look to the decisions of other states that have adopted the Uniform Act for guidance in our interpretation of § 31-10-03.

[¶21] The question becomes whether § 31-10-03 imposes an obligation on courts to take judicial notice of foreign laws on their own initiative. Other state courts interpreting the language of the Uniform Act have decided this precise question. "The general rule seems to be that the act merely removes the requirement of proving the foreign law but does not require the court to take judicial notice of foreign law suo moto."[1] Drechsler, *supra*, § 10. In other words, the language in the Uniform Act eliminates the need for the foreign law to be proven, but the foreign law must still be pleaded or presented by the party relying on the foreign law. *See id.* (and cases cited therein); 29 Am. Jur. 2d Evidence § 117 (2020); 1 Clifford S. Fishman & Anne T. McKenna, Jones on Evidence § 2:74 (7th ed. 2019); 2 Robert P. Mosteller et al., McCormick on Evidence § 335 (8th ed. 2020).

[¶22] The decisions of other states are consistent with our decisions in *Red Arrow*, *Schnoor*, and *Haggard*. That is, unless pleaded or presented, § 31-10-03 does not require courts to take judicial notice of foreign law on their own initiative. As this Court has previously decided, foreign laws will be presumed to be the same as the laws of North Dakota unless a party asks the court to take judicial notice of the foreign law or unless proven otherwise. Such a rule does not interfere with the intended purpose of § 31-10-03 and the Uniform Act, which is to eliminate the common law rule that foreign laws must be formally proven and may not be judicially noticed.

[¶23] How a party must request a court to take judicial notice is a separate question.[2] As we have previously noted, North Dakota courts presume that foreign law is the same as the law of North Dakota when no proof of the foreign law is offered and the court is not asked to take judicial notice of the foreign law. Other states have similarly decided cases. *See* Drechsler, *supra*, §§ 11-13 (and

---

[1] "Suo moto" literally means "on its own motion." *See* Asma T. Uddin, *Free Speech and Public Order Exceptions: A Case for the U.S. Standard*, 2015 BYU L. Rev. 727, 731 n.24 (2015).
[2] Under N.D.C.C. § 31-10-04, which was also adopted from the Uniform Act, a party is required to give adverse parties notice either in the pleadings or otherwise that the foreign law will be presented to the court or that the court will be asked to take judicial notice of the foreign law. Steven Joyce did not raise the issue of insufficient notice here, and the record indicates Steven Joyce had notice that Tarryl Joyce may have presented the foreign law to the court or asked the court to take judicial notice of the foreign law at the May 5 hearing.

cases cited therein); 31A C.J.S. Evidence § 30 (2020). Based on our decisions in *Red Arrow*, *Schnoor*, and *Haggard*, and the guidance offered by cases from other states, a party must plead or present the foreign law by providing the authority to be relied upon, or a party must request the court take judicial notice of the foreign law. Without pleading or presenting the foreign law or requesting the court take judicial notice of the foreign law, courts are not required to take judicial notice of the foreign law.

[¶24] The question then becomes in what manner and to what extent a court must inform itself of foreign law after a party has pleaded or presented foreign law or requested the court take judicial notice of foreign law. Section 31-10-03 states a court "may inform itself of the laws in such manner as it may deem proper and may call upon counsel to aid it in obtaining such information." The plain language of the statute gives the court wide discretion in how it informs itself of the foreign law, to what extent it informs itself of the foreign law, and whether it seeks counsel's assistance in obtaining the foreign law. A court may rely on the authority provided to it by the parties, or a court may rely on any additional authority it deems proper to obtain the foreign law. *See* Drechsler, *supra*, § 14 (and cases cited therein). But no matter how the court chooses to inform itself of the foreign law, once a party has pleaded or presented the foreign law or asked the court to take judicial notice of the foreign law, it is the court's duty to inform itself of the foreign law. *See Revlett v. Louisville & N. R. Co.*, 51 N.E.2d 95, 98 (Ind. App. 1943). If the court determines the information presented by the parties is incomplete or inadequate, the court may call upon counsel to assist it in obtaining the foreign law. Furthermore, consistent with the purpose of § 31-10-03 and the Uniform Act, a party may present the foreign law to the court, and a court may take judicial notice of the foreign law, without the foreign law being in evidence or without the foreign law being submitted in conformance with the rules of evidence. *Mertz*, 399 N.W.2d at 299; *Walter*, 391 N.W.2d at 158; Drechsler, *supra*, § 15(b).

[¶25] Tarryl Joyce argues "the District Court made no apparent effort to determine the law of Texas concerning the issue before dismissing the action," and "the Court should have, at a minimum, requested the parties to submit briefs on the issue of Texas law and mortgages before making its decision."

Under § 31-10-03, the district court was under no obligation to apprise itself of Texas law. Rather, it was Tarryl Joyce's obligation to present the applicable Texas law to the court. Tarryl Joyce's counsel simply informed the court that a Texas attorney informed him the second mortgage was invalid under Texas law. Tarryl Joyce did not plead or present the applicable Texas law to the court and did not request the court take judicial notice of the applicable Texas law. Our review of the entire record of the proceedings below indicates the applicable provisions of Texas law were not once cited or otherwise provided to the district court. Because Tarryl Joyce did not bring the applicable Texas law to the attention of the court, the court did not err by declining to, on its own, delve into whether the second mortgage was invalid under Texas law. And given the scant information Tarryl Joyce provided to the court on the Texas law, and the fact that she did not ask the court to take judicial notice of the Texas law, the district court did not err by declining to request counsels' aid in obtaining the applicable Texas law.

[¶26] Tarryl Joyce contends she did not believe she could present the applicable Texas law to the court at the May 5 hearing because the court ordered a hearing at which time it would hear "oral argument," and she believed the applicable provision of Texas law was "evidence." But, as previously discussed, the foreign law need not be in evidence before it may be judicially noticed, and a party presenting foreign law to the court under the statute need not do so in conformity with the rules of evidence.

[¶27] Because Tarryl Joyce did not plead or present the applicable Texas law to the court, and did not request the court take judicial notice of the applicable Texas law, the district court did not err by declining to inform itself of Texas law. For the same reasons, the district court did not err by declining to request counsels' aid in obtaining the applicable Texas law.

IV

[¶28] Tarryl Joyce argues the district court erred in finding the settlement agreement between the parties to be a binding contract and dismissing her claims based on there being a settlement agreement in place. Tarryl Joyce alleges the parties were mutually mistaken as to the validity of the second

10

mortgage and the settlement agreement was not intended as a final settlement agreement. Whether a contract is intended to be a complete, final, and binding agreement is a question of fact, which we review under the clearly erroneous standard. *Lenthe Invs., Inc. v. Serv. Oil, Inc.*, 2001 ND 187, ¶ 7, 636 N.W.2d 189. "[A] finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* (quoting *Lonesome Dove Petroleum, Inc. v. Nelson*, 2000 ND 104, ¶ 15, 611 N.W.2d 154).

[¶29] Tarryl Joyce contends the settlement agreement was not intended as a final settlement agreement because of the handwritten provision in the agreement stating, "The parties understand that certain additional mutually acceptable documents shall be required." However, the agreement also states: "This settlement is a full and complete resolution of all of the issues between the parties in this action"; "This settlement is a binding agreement between the parties"; and cautions the parties "the agreement may adversely affect their rights." Tarryl Joyce provided no explanation to the district court why the handwritten provision requiring additional documents was significant or required the denial of Steven Joyce's motion. Additionally, Tarryl Joyce provided no evidence that the parties did not intend the agreement to be a complete, final, and binding agreement. The only evidence provided by Tarryl Joyce was conclusory, hearsay statements from a Texas attorney who informed her attorney that the second mortgage was invalid under Texas law. There being no evidence provided by Tarryl Joyce to the contrary, the district court found the settlement agreement was a complete, final, and binding contract.

[¶30] Tarryl Joyce also argues the settlement agreement is unenforceable because of a mutually mistaken belief between the parties that a material provision in the agreement—the second mortgage—was valid. In addition to providing no evidence that the second mortgage was invalid under Texas law, Tarryl Joyce provided no evidence that the second mortgage was a material provision of the settlement agreement besides claiming the second mortgage was specifically negotiated. She provided no evidence of the value of the second mortgage or the value of the mineral interests that acted as security. Without

11

knowing the value of the second mortgage or the mineral interests acting as security, or the extent of the negotiations for the second mortgage, the district court was not provided with sufficient evidence to determine the materiality of the second mortgage. Steven Joyce's attorney informed Tarryl Joyce's attorney by letter that he believed the settlement was a binding agreement, and it was Steven Joyce's intent to enforce the agreement. Being advised of Steven Joyce's position, Tarryl Joyce should have requested an evidentiary hearing to prove the materiality of the second mortgage in addition to providing the court with the applicable Texas law.

[¶31] Because Tarryl Joyce offered no evidence in support of her arguments, all the district court was left with to rely on was a copy of the settlement agreement that was filed with Steven Joyce's motion for dismissal. The agreement explicitly states it was a full and complete resolution of all of the issues between the parties and was a binding agreement between the parties. The handwritten provision requiring additional documents did not state what documents were required and did not make the agreement contingent on the procurement of the additional documents. Having to rely solely on the agreement, without any evidence offered by Tarryl Joyce to support her position, the district court found the settlement agreement was a binding contract. The district court's findings of fact are not clearly erroneous.

[¶32] We decline to address whether there was a mutual mistake of fact[3] between the parties. Whether a mistake of fact or law exists is a question of fact, which we review under the clearly erroneous standard of review. *In re Matthew Larson Tr. Agreement*, 2013 ND 85, ¶ 9, 831 N.W.2d 388; *see also In re Estate of Vaage*, 2016 ND 32, ¶ 28, 875 N.W.2d 527 ("Reformation on the basis of fraud or mistake is a question of fact subject to the clearly erroneous standard of review."). Because Tarryl Joyce presented no evidence to the district court that the second mortgage was invalid under Texas law, we are

---

[3] "Mistake of foreign laws is a mistake of fact." N.D.C.C. § 9-03-15.

not left with a definite and firm conviction the district court erred in not finding the presence of a mutual mistake of fact.

V

[¶33] The parties' additional arguments are either without merit or unnecessary to our decision, and we decline to address them.

VI

[¶34] The judgment is affirmed.

[¶35] Gerald W. VandeWalle
Daniel J. Crothers
Jerod E. Tufte
Carol Ronning Kapsner, S.J.
Jon J. Jensen, C.J.

[¶36] The Honorable Carol Ronning Kapsner, S.J., sitting in place of McEvers, J., disqualified.