2005 ND 112

**Michele JOHNSON, f//k/a Michele Nelson, Plaintiff and Appellant**

v.

**NODAK MUTUAL INSURANCE COMPANY, Defendant and Appellee.**

No. 20040293.

Supreme Court of North Dakota.

June 22, 2005.

Rehearing Denied July 25, 2005.

David A. Garaas, Garaas Law Firm, Fargo, N.D., for plaintiff and appellant.

William P. Harrie, Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]   Michele Johnson appealed from a summary judgment dismissing her action for no-fault benefits against her motor vehicle insurer, Nodak Mutual Insurance Company, and from an order denying her motion for post-summary-judgment relief. We hold Johnson's action is barred by the four-year statute of limitations in N.D.C.C. § 26.1–41–19(1), and we affirm.

I

[¶ 2]   Johnson was involved in separate automobile accidents in December 1996 and in February 1997. When the accidents occurred, Johnson had motor vehicle insurance, including basic no-fault benefits of $30,000, with Nodak Mutual. Nodak Mutual paid for Johnson's medical expenses for those accidents through July 20, 1998. Nodak Mutual declined to make payments for any medical treatment received by Johnson after July 1998. In August 1999, Nodak Mutual reiterated its decision not to pay for medical services received by Johnson after July 1998, but informed her

that she could be re-examined by a physician chosen by Nodak Mutual and that she would need to complete a new authorization to release medical information. In September 1999, Johnson submitted an authorization to release medical information and a request for no-fault benefits to Nodak Mutual. In April 2000, Johnson received an independent medical examination from a physician chosen by Nodak Mutual, and Nodak Mutual paid for that examination in May 2000. Additionally, on November 9, 1999, Nodak Mutual paid for copies of Johnson's medical records; on March 27, 2000, it paid for a deposition transcript of her medical history under oath; and, on June 30, 2000, it paid for legal fees for obtaining her medical history under oath. Nodak Mutual thereafter did not pay for medical services for treatment incurred by Johnson. Johnson claims she informed her health care providers to submit their bills directly to Nodak Mutual, but the record does not reflect whether any bills were submitted to Nodak Mutual.

[¶ 3] By complaint dated September 24, 2003, Johnson sued Nodak Mutual, claiming she suffered post-traumatic myofascial syndrome and had incurred more than $19,000 in medical expenses as a result of the motor vehicle accidents. She claimed that Nodak Mutual's failure to pay for her medical expenses was a breach of contract and that she was entitled to indemnification for her reasonable and necessary medical and health care expenses for her injuries resulting from the motor vehicle accidents. She alleged Nodak Mutual required her to have an independent medical examination in April 2000, and her lawsuit was brought within four years after Nodak Mutual paid for that examination.

[¶ 4] Nodak Mutual answered, asserting it was not liable for Johnson's medical expenses incurred after July 20, 1998, because any "further medical and/or chiropractic care or treatment [was] not reasonable, necessary, remedial, nor causally related to the motor vehicle accidents." Nodak Mutual asserted Johnson's action was barred by the statute of limitations in N.D.C.C. § 26.1–41–19(1), because she failed to commence it within four years after the last payment of no-fault benefits. Nodak Mutual moved for summary judgment, arguing it had not paid Johnson any no-fault benefits since July 20, 1998. Nodak Mutual argued the independent medical examination performed in April 2000 was not for necessary medical treatment and therefore was not a no-fault benefit under N.D.C.C. ch. 26.1–41.

[¶ 5] Johnson resisted Nodak Mutual's motion for summary judgment, arguing she brought her action within four years after the last payment of benefits by Nodak Mutual. She claimed nothing in N.D.C.C. ch. 26.1–41 limited no-fault benefits to medical expenses for treatment alone. She argued the payments by Nodak Mutual in 2000 met the definition of medical expenses in N.D.C.C. § 26.1–41–01(9) and in the coverage and benefit provisions of Nodak Mutual's insurance policy, which required her to submit to a physical examination by a physician designated by Nodak Mutual. She thus argued those payments were benefits under the policy issued by Nodak Mutual.

[¶ 6] The trial court granted Nodak Mutual's motion for summary judgment, concluding Johnson's action was barred by the statute of limitations. The court concluded Nodak Mutual's payments for Johnson's independent medical examination and for the other related expenses for Nodak Mutual's own purposes were not necessary medical expenses and were therefore not no-fault benefits under N.D.C.C. ch. 26.1–41. The court concluded Nodak Mutual's payments for the independent medical ex-

amination and other related expenses did not toll the four-year statute of limitations for bringing an action for recovery of further benefits under N.D.C.C. § 26.1–41–19(1).

[¶ 7] Johnson moved for a new trial and for vacation of the judgment or relief from the judgment under N.D.R.Civ.P. 59 and 60. She argued the evidence was insufficient to justify the court's decision, because Nodak Mutual's insurance policy required her to submit to a physical examination before she could sue Nodak Mutual, and the policy created a contract or operated as a waiver for determining when the statute of limitations began running. She argued Nodak Mutual's payment for the cost of investigating her claim constituted a benefit under the insurance policy. She also claimed the judgment was not in accordance with the law or there had been a mistake of law, arguing: (1) her complaint was based upon a breach of contract and an action for breach of contract is controlled by the six-year statute of limitations in N.D.C.C. § 28–01–16; (2) her action accrued in April 2000 when she was required to attend an independent medical examination under the contractual provisions in her policy; (3) Nodak Mutual waived the time when an action accrued under N.D.C.C. § 26.1–41–19(1), or was estopped to rely upon that period under the terms of its policy; (4) there was no basis to distinguish between the payments by Nodak Mutual for the investigation of her claim and a payment for treatment; and (5) the damages she sought in her action were not "for recovery of further benefits" under N.D.C.C. § 26.1–41–19(1). The court denied Johnson's motion for post-summary-judgment relief.

[¶ 8] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

II

[¶ 9] We review this appeal under our standards for summary judgment, which is a procedure for the prompt resolution of a controversy on the merits without a trial if the evidence demonstrates there are no disputed issues of material fact or inferences to be drawn from undisputed facts, and if the evidence shows a party is entitled to judgment as a matter of law. *Bender v. Aviko USA L.L.C.*, 2002 ND 13, ¶ 4, 638 N.W.2d 545. Whether a trial court properly grants summary judgment is a question of law, which we review de novo on the entire record. *Fetch v. Quam*, 2001 ND 48, ¶ 8, 623 N.W.2d 357. A party seeking summary judgment bears the initial burden of showing there is no genuine dispute regarding the existence of a material fact. *Id.* at ¶ 9. On appeal, we view the evidence in the light most favorable to the party opposing the motion. *Id.* at ¶ 8. The party resisting a motion for summary judgment may not simply rely on unsupported and conclusory allegations or denials in the pleadings; rather, that party must set forth specific facts, whether by affidavit or by directing the court to relevant evidence in the record, demonstrating a genuine issue of material fact. *Lawrence v. Roberdeau*, 2003 ND 124, ¶ 7, 665 N.W.2d 719.

III

[¶ 10] Johnson argues her action is not barred by the statute of limitations. She claims her cause of action accrued no earlier than the independent medical examination in April 2000. She argues the language in the insurance policy that requires her to submit to a physical examination by a physician selected by Nodak

Mutual before beginning a lawsuit operates as a waiver or estoppel to extend the statute of limitations. She argues there is no contractual or statutory basis to distinguish Nodak Mutual's payments for the independent medical examination from payments made for her medical treatment. She claims the independent medical examination and other expenses incurred by Nodak Mutual are "necessary medical ... services" under N.D.C.C. § 26.1–41–01(9). She also argues her action for breach of contract is controlled by the six-year statute of limitations in N.D.C.C. § 28–01–16, because North Dakota's no-fault statutes provide for a cumulative remedy rather than an exclusive remedy. She further argues her action is not barred by the statute of limitations because of the continuing nature of her medical condition.

[¶ 11] Section 26.1–41–02, N.D.C.C., requires owners of motor vehicles registered in North Dakota to provide security for payment of basic no-fault benefits. Section 26.1–41–19, N.D.C.C., provides, in part:

1. . . . . .

> If basic or optional excess no-fault benefits have been paid for loss, an action for recovery of further benefits for the loss by either the same or another claimant may be commenced not later than four years after the last payment of benefits.

. . . .

4. The time period limitations prescribed in this section govern all actions for basic and optional excess no-fault benefits under this chapter notwithstanding any limitation prescribed elsewhere in the laws of this state.

[¶ 12] Section 26.1–41–19, N.D.C.C., is a specific statute of limitations for actions for no-fault benefits, which is explicitly recognized in the language that "[t]he time period limitations prescribed in this section govern all actions for basic and optional excess no-fault benefits under this chapter notwithstanding any limitation prescribed elsewhere in the laws of this state." N.D.C.C. § 26.1–41–19(4). Under our rules of statutory construction, a specific statute controls a general statute. *See Diocese of Bismarck Trust v. Ramada, Inc.,* 553 N.W.2d 760, 766 (N.D.1996) (holding, in action for reformation of ground lease, specific ten-year statute of limitations for action upon contract in instrument affecting title to real property controls over general six-year statute of limitations for action upon contract). We reject Johnson's argument that the no-fault statutes provide for a cumulative remedy and do not preempt her common law claim for breach of contract. Section 1–01–06, N.D.C.C., provides "[i]n this state there is no common law in any case where the law is declared by the code." This Court has construed N.D.C.C. § 1–01–06 to mean statutory enactments take precedence over and govern conflicting common law doctrines. *See Vandall v. Trinity Hosps.,* 2004 ND 47, ¶¶ 14, 16, 676 N.W.2d 88 (holding 180–day statute of limitations in N.D.C.C. § 34–01–20(3) governs retaliatory discharge claim, rather than six-year statute of limitations for common law claim). In deciding the appropriate statute of limitations in a given case, courts consider the actual nature of the subject matter of the action and not the form of the remedial procedure. *See Nesvig v. Nesvig,* 2004 ND 37, ¶ 16, 676 N.W.2d 73; *Diocese of Bismarck Trust,* at 765; *Johnson v. Haugland,* 303 N.W.2d 533, 538 (N.D.1981). The actual nature of Johnson's action in this case is for basic no-fault benefits. We conclude the specific language in N.D.C.C. § 26.1–41–19 governs "all actions for basic ... no-fault benefits," rather than the more general statute of

limitations for actions upon a contract, and Johnson's action is governed by the four-year statute of limitations in that provision.

[¶ 13] Section 26.1–41–19(1), N.D.C.C., provides "[i]f basic . . . no-fault benefits have been paid for loss, an action for recovery of further benefits for the loss by either the same or another claimant may be commenced not later than four years after the last payment of benefits." In construing statutes, our duty is to ascertain the intent of the legislature. *See County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). The legislature's intent must be sought initially from the statutory language. *Id.* Unless words are defined by statute, they must be given their plain, ordinary, and commonly understood meaning. *Reed v. Hillsboro Pub. Sch. Dist.*, 477 N.W.2d 237, 240 (N.D.1991). The interpretation of a statute is a question of law. *Aamodt v. North Dakota Dep't of Transp.*, 2004 ND 134, ¶ 14, 682 N.W.2d 308.

[¶ 14] The plain language and context of N.D.C.C. § 26.1–41–19(1) triggers the statute of limitations for recovery of further basic no-fault benefits from the last payment of basic no-fault benefits. Section 26.1–41–01(2), N.D.C.C., defines "basic no-fault benefits" to mean "benefits for economic loss resulting from accidental bodily injury." Section 26.1–41–01(7), N.D.C.C., defines "economic loss" to mean "medical expenses, rehabilitation expenses, work loss, replacement services loss, survivors' income loss, survivors' replacement services loss, and funeral, cremation, and burial expenses," and N.D.C.C. § 26.1–41–01(9) defines "medical expenses" to mean "reasonable charges incurred for necessary medical . . . services."

[¶ 15] We construe necessary medical services to mean necessary medical services for the benefit and treatment of the insured, and we hold the trigger for the statute of limitations in N.D.C.C. § 26.1–41–19(1) is the last payment for necessary medical services for treatment. Johnson's independent medical examination and the other related expenses for a deposition transcript of her medical history under oath, copies of her medical records, and legal fees for obtaining her medical history under oath were incurred by Nodak Mutual at its own insistence to assess her claim for no-fault benefits and were not necessary medical services for her treatment. We reject Johnson's argument that the independent medical examination was a necessary medical expense, because she was required to submit to the examination under the terms of the insurance policy. Although the insurance policy and N.D.C.C. § 26.1–41–11 obligated Johnson to participate in the independent medical examination as a condition precedent to bringing an action, the examination is not a no-fault benefit for the insured within the meaning of N.D.C.C. ch. 26.1–41. We agree with Nodak Mutual that the construction urged by Johnson would lead to an absurd result, because it would allow those expenses to be credited against the limit of no-fault benefits available under an insurance policy, thereby reducing the amount of no-fault benefits that could be paid to the insured for medical expenses incurred as a result of injuries sustained in an automobile accident. That interpretation is contrary to the purpose of the no-fault statutes to provide adequate compensation to victims of automobile accidents. *See Haff v. Hettich*, 1999 ND 94, ¶ 33, 593 N.W.2d 383.

[¶ 16] Here, there is no dispute Nodak Mutual declined to pay for necessary medical services for treatment of Johnson after July 20, 1998, and she began her action for basic no-fault benefits more than four years after those payments. The record

does not reflect what occurred between Nodak Mutual's payment for the independent medical examination in 2000 and Johnson's commencement of this action in 2003, but she does not claim Nodak Mutual engaged in any form of affirmative deception so as to be equitably estopped from claiming the operation of the statute of limitations. *See Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 24, 590 N.W.2d 454. We conclude the trial court did not err in granting summary judgment dismissing Johnson's action against Nodak Mutual for no-fault benefits.

## IV

[¶ 17] Johnson's remaining issues on appeal were raised only in her motion for a new trial under N.D.R.Civ.P. 59 and for relief from the judgment under N.D.R.Civ.P. 60. We have said that issues presented for the first time to a trial court in a motion for a new trial generally are too late to be considered to make a new rule of law, or to refine an existing rule. *Rummel v. Rummel*, 265 N.W.2d 230, 232 (N.D.1978); *Kirchoffner v. Quam*, 264 N.W.2d 203, 207 (N.D.1978). *See In re Guardianship/Conservatorship of Van Sickle*, 2005 ND 69, ¶¶ 38–40, 694 N.W.2d 212 (holding evidence in support of motion for new trial was not newly discovered evidence that would warrant new trial). A motion for relief from a judgment under N.D.R.Civ.P. 60 also is not a substitute for an appeal. *Olander Contracting Co. v. Gail Wachter Invs.*, 2003 ND 100, ¶ 10, 663 N.W.2d 204. A motion for relief from a judgment under N.D.R.Civ.P. 60(b) may not be used to provide a litigant with a second chance to present new explanations, legal theories, or proof to a court. *See Olander*, at ¶ 10.

[¶ 18] We review a trial court's denial of a motion for a new trial and for relief from a judgment under the abuse-of-discretion standard. *See Schaefer v. Souris River Telecomms. Coop.*, 2000 ND 187, ¶ 14, 618 N.W.2d 175; *Bender v. Beverly Anne, Inc.*, 2002 ND 146, ¶ 18, 651 N.W.2d 642. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Schaefer*, 2000 ND 187, ¶ 10, 618 N.W.2d 175.

[¶ 19] Because of our resolution of the issues pertaining to summary judgment, we conclude the trial court did not abuse its discretion in denying Johnson's motion for post-summary-judgment relief.

## V

[¶ 20] We affirm the summary judgment and the order denying Johnson post-judgment relief.

[¶ 21] GERALD W. VANDE WALLE, C.J.,CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, concur.

[¶ 22] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.