2006 ND 24

**LeRoy Kenneth WHEELER, Plaintiff and Appellant**

v.

**Gary A. GARDNER, Grand Forks County Correctional Center, Defendants and Appellees.**

**No. 20050166.**

Supreme Court of North Dakota.

Jan. 31, 2006.

Rehearing Denied Feb. 23, 2006.

LeRoy Kenneth Wheeler, Bismarck, ND, pro se.

Linda E. Bata (argued) and Ronald F. Fischer (on brief), Pearson Christensen Cahill & Clapp, P.L.L.P., Grand Forks, ND, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] LeRoy Wheeler appeals from a district court summary judgment dismissing his declaratory judgment lawsuit challenging. the withdrawal of funds from his inmate account to pay for dental services. We affirm, concluding the district court did not err in determining North Dakota law authorized withdrawal of the full amount of the dental services provided to Wheeler.

I

[¶ 2] In late 2004, Wheeler was an inmate at the Grand Forks County Correctional Center awaiting trial on pending state criminal charges. In November 2004 Wheeler complained of a toothache and requested dental services. He was transported to a local dental office to have a tooth extracted on December 15, 2004.

The dentist billed Wheeler $197, including a $78 "after hours" fee.

[¶ 3] The Correctional Center provided a copy of the bill to Wheeler and also a statement indicating the balance was due and owing. Wheeler filed three separate grievances, claiming that the Correctional Center could not charge his inmate account the full $197 for the dental services. Each of the grievances was denied, and Wheeler's inmate account was charged $197.

[¶ 4] Wheeler then brought a declaratory judgment action in district court against the Correctional Center and its administrator, Gary Gardner, alleging that the Correctional Center was not authorized to charge his inmate account for the dental services. The district court granted the motion of the Correctional Center and Gardner for summary judgment dismissing the complaint, concluding that North Dakota law authorized collection of the full $197 dental bill from Wheeler's inmate account.

[¶ 5] An order granting the motion for summary judgment dismissing the complaint was entered on May 9, 2005. On that same date, Wheeler filed a notice of appeal from the order. On May 18, 2005, a judgment was entered dismissing Wheeler's complaint with prejudice.

## II

[¶ 6] Although an order granting summary judgment is not appealable, an attempted appeal from the order will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *See, e.g., Riemers v. Grand Forks Herald,* 2004 ND 192, ¶ 1 n. 1, 688 N.W.2d 167; *Schuck v. Montefiore Pub. Sch. Dist. No. 1,* 2001 ND 93, ¶ 1 n. 1, 626 N.W.2d 698. Accordingly, we will treat Wheeler's attempted appeal ·from the order granting summary judgment as an appeal from the May 18, 2005, judgment.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 32–23–01. Wheeler's appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. §§ 28–27–01 and 32–23–07.

## III

[¶ 8] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from the undisputed facts, or if the only issues to be resolved are questions of law. *Miller v. Diamond Res., Inc.,* 2005 ND 150, ¶ 8, 703 N.W.2d 316; *Johnson v. Nodak Mut. Ins. Co.,* 2005 ND 112, ¶ 9, 699 N.W.2d 45. Whether the trial court properly granted summary judgment is a question of law that we review de novo on the entire record. *Miller,* at ¶ 8; *Johnson,* at ¶ 9.

[¶ 9] In this case there are no disputed genuine issues of material fact, or disputed inferences to be drawn from the undisputed facts. The issues presented are purely questions of law requiring interpretation of the statutory provisions governing inmate accounts and withdrawal of funds for an inmate's medical expenses.

[¶ 10] Interpretation of a statute is a question of law, fully reviewable on appeal. *Johnson,* 2005 ND 112, ¶ 13, 699 N.W.2d 45; *In re Estate of Kimbrell,* 2005 ND 107, ¶ 9, 697 N.W.2d 315; *Pratt v. Altendorf,* 2005 ND 32, ¶ 12, 692 N.W.2d 115. Our primary duty in construing a statute is to ascertain the intent of the legislature, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02. If

the wording of a statute is clear and unambiguous, the legislative intent is presumed clear from the face of the statute and the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. N.D.C.C. § 1–02–05.

[¶ 11] The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2). We presume the legislature did not intend an unreasonable result or unjust consequences. N.D.C.C. § 1–02–38(2). Statutes must be construed to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4).

## IV

[¶ 12] Inmate accounts and an inmate's responsibility for medical and dental expenses are governed by N.D.C.C. § 12–44.1–12.1, which provides in pertinent part:

1. The correctional facility administrator shall establish an inmate account for each inmate.

2. The correctional facility administrator may withdraw funds from an inmate's account to meet the inmate's legitimate financial obligations, including child support and restitution. The correctional facility administrator may withdraw funds from the inmate's account to pay for the inmate's medical, dental, and eye care costs while the inmate is incarcerated in the correctional facility. Before the funds may be withdrawn, the inmate must first receive written notice and be provided a hearing with the right to correctional facility staff assistance and the right to review by the correctional facility administrator. No written notice or hearing is required if the withdrawal

of funds is being made to meet the inmate's child support obligation.

3. A correctional facility administrator may collect fees from inmates to offset health care costs as follows:

a. For a medical visit, up to ten dollars per medical visit made at the request of an inmate.

b. For self-inflicted injuries, the total amount of medical costs incurred.

c. For necessary health care services, the correctional facility may seek reimbursement from the inmate up to the total amount of health care costs incurred. If the inmate has health insurance coverage, a medical or health care provider must file a claim for reimbursement from the health insurance coverage carrier. A correctional facility may not assess an inmate for any costs associated with an intake health care assessment and related testing or for an examination of an inmate made at the request of the facility.

d. For elective health care requested by an inmate and as allowed by correctional facility policy, the inmate is responsible for the amount of the costs incurred.

e. A correctional facility may not deny necessary and nonelective medical and health care to an inmate who does not have health insurance or does not have the ability to pay the costs of the medical or health care.

[¶ 13] The statute authorizes withdrawals from an inmate's account for certain medical expenses. Subsection (1) of N.D.C.C. § 12–44.1–12.1 requires the creation of an account for each inmate. Subsection (3) of the statute provides that an inmate is responsible for certain medical

and health care expenses, and that the Correctional Center may collect fees from the inmate to cover those expenses. Subsection (2) of the statute authorizes the administrator of the Correctional Center to withdraw funds from an inmate's account to cover the inmate's financial obligations, including medical, dental, and eye care expenses.

## A

[¶ 14] Wheeler contends that N.D.C.C. § 12–44.1–12.1(3)(a) creates a maximum charge to the inmate of $10 for any medical visit made at the request of the inmate. Thus, he contends, the Correctional Center could not assess his inmate account the full amount of his dental visit, but was limited to withdrawing only $10.

[¶ 15] The illogical reading of the statute urged by Wheeler would lead to absurd results and would render the remainder of N.D.C.C. § 12–44.1–12.1(3) superfluous. Other provisions in subsection (3) authorize the Correctional Center administrator to collect from the inmate "the total amount of medical costs incurred" for self-inflicted injuries, "the total amount of health care costs incurred" for necessary health care services, and "the amount of the costs incurred" for elective health care requested by the inmate. It is beyond dispute that any health care visit will result in fees and expenses in excess of $10. If, as Wheeler suggests, the maximum charge to the inmate for any medical visit is $10, the remainder of the provisions in subsection (3) authorizing collection of the total amount of the medical costs incurred would be rendered wholly inoperative and meaningless. *See Ridl v. EP Operating Ltd. P'ship*, 553 N.W.2d 784, 787 (N.D. 1996). It is presumed that the legislature acts with purpose and does not perform idle acts. *Bickel v. Jackson*, 530 N.W.2d 318, 320 (N.D.1995); *see also* N.D.C.C. § 1–02–38(2) ("[i]n enacting a statute, it is presumed that . . . [t]he entire statute is intended to be effective").

[¶ 16] The logical interpretation of N.D.C.C. § 12–44.1–12.1(3)(a), when read in context with the entire statute, is that it authorizes an *additional charge* of $10 for each medical visit made at the request of the inmate. The inmate remains liable for the full amount of the actual medical costs incurred. The legislature's inclusion in N.D.C.C. § 12–44.1–12.1(3) of other provisions authorizing reimbursement for the total amount of medical costs incurred is a clear expression of the legislature's intent that the $10 fee in N.D.C.C. § 12–44.1–12.1(3)(a) is not a maximum charge, but rather is an additional fee for each requested medical visit. The statute thereby allows the Correctional Center to recoup some of the expense of arranging and transporting the inmate to an outside appointment or providing on-site health care services, and also serves to deter inmates from excessive and frivolous requests for medical visits.

[¶ 17] We conclude that N.D.C.C. § 12–44.1–12.1(3)(a) does not limit the charge to an inmate's account for a medical visit to a maximum of $10, but the Correctional Center may seek to collect from the inmate the entire amount incurred for certain medical visits plus an additional $10 fee.

## B

[¶ 18] Wheeler also contends the $78 "after hours" fee billed by the dental office was not a medical or health care expense, and therefore he was not responsible for that amount.

[¶ 19] Under N.D.C.C. § 12–44.1–12.1(3)(c), the Correctional Center was authorized to seek reimbursement, and charge Wheeler's inmate account, for the

total amount of "health care costs" incurred. Reading this provision in context, and giving the statutory language its plain, ordinary, and commonly understood meaning, we conclude an "after hours" fee charged for dental services provided outside normal office hours is a "health care cost" under the statute. We believe it is commonly understood that any item directly related to, and billed by the health care provider as, a medical or dental service is a "health care cost."

[¶ 20] We conclude the district court did not err in determining that the withdrawal of the full $197 from Wheeler's inmate account was authorized.

## V

[¶ 21] We have considered the remaining issues and arguments raised by the parties and find them either unnecessary to our decision or without merit. We affirm the summary judgment dismissing Wheeler's declaratory judgment action.

[¶ 22] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.