2006 ND 12

**Randi J. KUPERUS, Plaintiff and Appellant**

v.

**Bonita K. WILLSON, individually, and as the Personal Representative of the Estate of Daniel Kent Willson, Deceased, Defendants and Appellees.**

**No. 20050114.**

Supreme Court of North Dakota.

Jan. 31, 2006.

Arnold V. Fleck, Fleck Law Office, Bismarck, ND, for plaintiff and appellant.

James J. Coles, Coles Law Firm, PC, Bismarck, ND, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Randi J. Kuperus appealed from a judgment entered upon an order dismissing her action against Bonita K. Willson ("Willson"), individually and as the personal representative of the Estate of Daniel Kent Willson, and denying Kuperus's request to reinstate a judgment awarding her $11,800, plus interest. We conclude the district court misapplied the law in interpreting a settlement agreement between Kuperus and Willson. We reverse the judgment dismissing Kuperus's action against Willson and remand to the district court with instructions to reinstate the judgment awarding Kuperus $11,800, plus interest.

I

[¶ 2] Daniel and Bonnie Willson were divorced in November 1999. Daniel Willson and Kuperus began a relationship, and she was living in his home with his two minor sons and her three minor children when he died in an automobile accident in January 2001. Willson was appointed personal representative of Daniel Willson's estate, and she denied Kuperus's claim for $11,800 from the estate. Kuperus claimed she had been engaged to Daniel Willson and the $11,800 represented proceeds for her workers compensation claim, which had been deposited in his bank account.

[¶ 3] Kuperus sued Willson, individually and in her capacity as personal representative of Daniel Willson's estate, to recover the $11,800. The parties executed a settlement agreement that was signed by Kuperus on July 22, 2004, and by Willson on August 1, 2004. The agreement provided:

> [Willson] shall pay ... Kuperus a lump sum payment of $3,000 on or before August 9, 2004. The $3,000 payment shall be made in the form of a certified or cashier's check from a reliable financial institution made payable to "Arnold V. Fleck," Ms. Kuperus' attorney. The $3,000 payment shall be presented to Mr. Fleck on or before 5:00 p.m., central standard time, on August 9, 2004, at his office.... Upon proof of timely payment being filed with this Court, in the form of an affidavit of ... [Willson's] attorney, verified under oath, this action may be dismissed with prejudice without an award of costs to any party.
>
> If [Willson] should fail to make the $3,000 payment by 5:00 p.m., central standard time, on August 9, 2004, a money judgment in favor of [Kuperus] shall be entered against [Willson] ... in the amount of $11,800, plus interest at the rate of 6% per annum on the principal amount of $11,800, from April 30, 2001, to the date of entry of the judgment, at which time interest shall accrue on the total judgment (i.e. $11,800, plus pre-judgment interest) at the post-judgment rate of 12% per annum. Such judgment shall be entered upon Arnold V. Fleck, [Kuperus's] attorney, filing with this Court an affidavit that verifies under oath that [Willson] failed to make the $3,000 payment by the August 9, 2004, deadline.

[¶ 4] Willson does not dispute that she failed to present a lump sum payment of $3,000 to Kuperus's attorney before 5:00 p.m. on August 9, 2004. Kuperus's attor-

ney sent the district court judge a letter, dated August 9, 2004, and received and filed by the clerk of the district court on August 10, 2004. The letter from Kuperus's attorney informed the court the parties had settled and stated the following documents were enclosed for entry of judgment consistent with the parties' agreement: the settlement agreement, an affidavit of nonpayment, an affidavit of identification of judgment debtors, a proposed order for judgment, and a proposed judgment. The district court signed an order for judgment on August 16, 2004, and a judgment, dated and filed August 17, 2004, was entered in favor of Kuperus against Willson for $11,800, plus pre-judgment interest.

[¶ 5] Meanwhile, on August 11, 2004, a $3,000 certified check, drawn by Willson and dated August 10, 2004, was delivered by UPS with no cover letter to Kuperus's attorney. Kuperus's attorney negotiated the check and sent Willson's attorney an August 11, 2004 letter stating:

> Other than the check, nothing else was enclosed in the envelope that was delivered by UPS.
>
> Since the payment was issued and received after the August 9th deadline provided for ... [in] the Settlement Agreement, it is being treated as a payment on the balance owed under the stipulation/confession to judgment....
>
> Upon receipt of notice of entry of the judgment from the Clerk's office, I will file with the court a partial satisfaction of the judgment noting the $3,000 payment was received on August 11, 2004. The satisfaction will include a statement of the balance owing after the $3,000 payment is applied to the balance stipulated to in ... the Settlement Agreement.

On August 19, 2004, Kuperus's attorney filed a partial satisfaction of judgment that

reflected a payment of $3,000 had been made to reduce the total amount owed under the judgment.

[¶ 6] In November 2004, Willson moved under N.D.R.Civ.P. 60(b) to vacate the judgment, claiming an accord and satisfaction. The court granted Willson's motion to vacate the judgment, concluding:

From the information provided, the Court is most concerned about a judgment signed by the Court and without the knowledge the settlement amount was paid, even if paid late. The Court is forced to determine whether receiving that knowledge on the front end would have made a difference in deciding to sign the order for judgment due to default by the Plaintiff. The Court is of the opinion clarification would have been required by the Court if this information would have been before the Court. Having determined this the Court finds vacating the order and judgment under Rule 60(b) is appropriate.

The parties are now free to present to the Court the issues of default under the agreement, accord and satisfaction, sufficiency of the agreement or any other issue involved.

[¶ 7] Kuperus subsequently moved to reinstate the $11,800 judgment, or, alternatively, for clarification of the order vacating the judgment. Kuperus argued the settlement agreement was unambiguous and there was no evidence of an accord and satisfaction. Willson resisted Kuperus's motion and filed a cross-motion, arguing the settlement agreement should be confirmed and Kuperus's action should be dismissed. The court denied Kuperus's motion to reinstate the $11,800 judgment, concluding the $3,000 was not a partial payment under the settlement agreement and Kuperus waived the late payment by accepting the amount under the stipulated settlement agreement. The court concluded Kuperus's acceptance of the late payment constituted confirmation of the settlement agreement and dismissed her action against Willson.

## II

[¶ 8] This appeal reaches us in the context of the district court's decision to grant Willson relief from the original judgment under N.D.R.Civ.P. 60(b). We review a court's decision on a motion for relief from a judgment under the abuse-of-discretion standard. *Johnson v. Nodak Mut. Ins. Co.*, 2005 ND 112, ¶ 18, 699 N.W.2d 45. "A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *Id.*

## III

[¶ 9] Kuperus argues the district court erred in concluding she waived her right to recover under the settlement agreement by accepting the $3,000, because she was entitled to more than $11,800, plus interest, under the terms of the agreement and the $3,000 payment was unconditionally made to her. She argues the settlement agreement is unambiguous, and the district court's determination that she waived her right to recover under the agreement by accepting the $3,000 payment is contrary to law. Willson responds the court did not abuse its discretion in construing the settlement agreement, and Kuperus's acceptance of $3,000 constituted a waiver of Willson's late payment. Willson argues she was entitled to relief from the original judgment because the $3,000 was received in settlement of Kuperus's action.

[¶ 10] " 'In North Dakota, the law looks with favor upon compromise and settlement of controversies between parties, and where the settlement is fairly

entered into, it should be considered as disposing of all disputed matters which were contemplated by the parties at the time of the settlement.'" *Vandal v. Peavey Co.*, 523 N.W.2d 266, 268 (N.D.1994) (quoting *Thomas C. Roel Assoc., Inc. v. Henrikson*, 295 N.W.2d 136, 137 (N.D. 1980)). When a settlement is fairly made before trial, it "takes on the character of a contract between the parties and is final and conclusive, and based on good consideration." *Bohlman v. Big River Oil Co.*, 124 N.W.2d 835, 837 (N.D.1963). A settlement will not be set aside absent a showing of fraud, duress, undue influence, or any other grounds for rescinding a contract. *Id.* at 837–39.

[¶ 11] A settlement agreement is a contract that either party may enforce, and the parties' rights and responsibilities are limited by the terms of the agreement. *Hastings Pork v. Johanneson*, 335 N.W.2d 802, 806 (N.D.1983). The interpretation of a written contract to determine its legal effect is a question of law. *Lenthe Invs., Inc. v. Service Oil, Inc.*, 2001 ND 187, ¶ 14, 636 N.W.2d 189. In *Lire, Inc. v. Bob's Pizza Inn Rests., Inc.*, 541 N.W.2d 432, 433–34 (N.D.1995) (citations omitted), we outlined our rules for the interpretation of a written contract:

Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone if possible. A contract must be construed as a whole to give effect to each provision, if reasonably practicable. We construe contracts to be definite and capable of being carried into effect, unless doing so violates the intention of the parties. Unless used by the parties in a technical sense, words in a contract are construed in their ordinary and popular sense, rather than according to their strict legal meaning.

If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent. Whether or not a contract is ambiguous is a question of law. An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the language in question.

[¶ 12] We conclude the parties' settlement agreement clearly and unambiguously required Willson to pay Kuperus $3,000 before 5:00 p.m. on August 9, 2004, in order to authorize the court to dismiss with prejudice Kuperus's action against Willson. The plain language of the settlement agreement provided that if Willson did not make the $3,000 payment by that designated time, Kuperus was entitled to a money judgment in the amount of $11,800, plus interest, and Kuperus was entitled to entry of a judgment upon her attorney's filing of an affidavit that verified Willson failed to make the $3,000 payment by that deadline. The language in the settlement agreement plainly and unambiguously outlines the consequences for Willson's failure to make the $3,000 payment by the August 9, 2004 deadline, and Willson does not dispute that she failed to make the payment by that deadline.

[¶ 13] The district court essentially decided Willson breached the settlement agreement and Kuperus waived the late payment by accepting the $3,000. A waiver requires a voluntary and intentional relinquishment of a known right. *Public Service Comm'n v. American Grain & Cattle, Inc.*, 281 N.W.2d 48, 54 (N.D.1979). The designation of a specific time for the $3,000 payment, with consequences for failure to make the payment by that time, unambiguously manifests an intent that time was of the essence for the

settlement agreement. *See* N.D.C.C. § 9–07–23 (stating time is of the essence for a contract if the contract discloses that intent). *See also Asplund v. Danielson,* 56 N.D. 485, 489, 217 N.W. 848, 850 (1928).

[¶ 14] Moreover, the contemporaneous documents prepared by Kuperus's attorney do not support a determination that Kuperus voluntarily and intentionally relinquished her right to a judgment for $11,800. This is not a case in which Kuperus's actions reflect a pattern of conduct constituting a waiver. *See Shervold v. Schmidt,* 359 N.W.2d 361, 363–64 (N.D.1984) (accepting several late monthly payments constituted waiver and precluded cancellation of contract for deed); *Dangerfield v. Markel,* 252 N.W.2d 184, 191–93 (N.D. 1977) (seller's continued deliveries under contract waived seller's right to rely upon 15–day payment provision). Rather, Kuperus's attorney sent the district court judge a letter, dated August 9, 2004, and received and filed by the clerk of the district court on August 10, 2004, which informed the court the parties had settled and enclosed certain documents for entry of judgment for $11,800. When Kuperus received the certified check on August 11, 2004, her attorney negotiated the check and sent Willson's attorney an August 11, 2004 letter that stated the check had been received without a cover letter, and because payment was received after the August 9, 2004 deadline, Kuperus's attorney was treating the check as payment on the balance owed under the stipulation. Kuperus's attorney indicated that upon receipt of the notice of entry of judgment, he would file a partial satisfaction of the judgment, noting the $3,000 payment was received on August 11, 2004. Kuperus's attorney had a clear right to negotiate the check under the terms of the settlement agreement. *See* N.D.C.C. § 9–12–07. Kuperus's negotiation of the check without evidence of her mutual assent does not constitute an accord and satisfaction under North Dakota law. *See Peterson v. Ramsey County,* 1997 ND 92, ¶ 12, 563 N.W.2d 103. Kuperus's actions do not constitute an intentional relinquishment of a known right, and we conclude the district court misapplied the law in interpreting the settlement agreement and deciding Kuperus waived her right to payment by the August 9, 2004 deadline.

[¶ 15] In *Bohlman,* 124 N.W.2d at 838–39, this Court recognized a district court has inherent power to avoid a stipulation in law or equity. *See, e.g., Weber v. Weber,* 1999 ND 11, ¶¶ 10–11, 589 N.W.2d 358. Here, there is no evidence the stipulation was entered into on the grounds of fraud or any other grounds under which a contract may be set aside, and Willson has not claimed there is any such evidence. We conclude Willson's failure to comply with the clear and unambiguous contractual terms in the settlement agreement is not a basis in law or equity to set aside the agreement. Willson's failure to make the $3,000 payment by the August 9, 2004 deadline was not a breach of the settlement agreement, but an event that triggered the provisions of the settlement agreement which required judgment to be entered against her in the amount of $11,800, plus interest.

[¶ 16] On August 10, 2004, at the time the judgment was submitted to the court, Kuperus's attorney did not know the $3,000 check from Willson would be received the next day, August 11, 2004. The check had been received when the court ordered judgment on August 16, 2004. The court expressed concern over its lack of knowledge of the $3,000 payment on August 11, 2004, and stated that clarification would have been required. Although Kuperus's attorney might have notified the

court of the late receipt, neither that knowledge nor any subsequent clarification would have changed application of the law we have outlined to this chain of events.

[¶ 17] We conclude the district court misapplied the law in interpreting the settlement agreement and vacating the original judgment. We therefore conclude the court abused its discretion. Under the plain language of the settlement agreement, Kuperus was entitled to entry of judgment in the amount of $11,800, plus interest.

### IV

[¶ 18] We reverse the judgment dismissing Kuperus's action against Willson and remand to the district court with instructions to reinstate the original judgment for $11,800, plus interest, subject to the partial satisfaction.

[¶ 19]CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.