2007 ND 27

STOCKMAN BANK OF MONTANA, a
Montana banking corporation,
Plaintiff and Appellee

v.

AGSCO, INC., a North Dakota corporation, Capital Harvest, Inc., d/b/a Capital Harvest Finance Company, a North Dakota corporation, individually and as agent for AGSCO, Inc., Farmers Union Oil Company of Williston, a North Dakota cooperative association, MON–KOTA, Inc., a Montana corporation, Betaseed, Inc., a Minnesota corporation, Central Insurance Agency, a North Dakota corporation, Steven D. Cayko, a/k/a Steve Cayko, Perry Elletson, a/k/a Perry E. Elletson, Ron Gross, a/k/a Ronnie Gross, Edward P. Ochs, a/k/a Eddie Ochs, Tom Ochs, Mark Brunelle, Kelly Brunelle, and Bill Sheldon, Defendants

and

Farmers Union Oil Company of Williston, a North Dakota cooperative association, Third-party Plaintiff

v.

Hardy Farm, Inc., and Jim Hardy, Third-party Defendants

Betaseed, Inc., a Minnesota corporation, Defendant and Appellant.

No. 20060119.

Supreme Court of North Dakota.

Feb. 28, 2007.

Garth H. Sjue (argued) and Ken G. Hedge (on brief), Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Williston, N.D., for plaintiff and appellee.

H. Malcolm Pippin (argued), Joel M. Fremstad (on brief), and Kimberly L. Peterson (on brief), Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Williston, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Betaseed, Inc., appeals from a summary judgment dismissing its claim to proceeds from a 2002 sugar beet crop grown by Hardy Farm, Inc. Because we conclude Betaseed substantially complied with the requirements for an agricultural supplier's lien, we reverse and remand.

I

[¶ 2] Stockman Bank of Montana, a Montana banking corporation with a branch office in Sidney, Montana, provided operating loans for the 2001 and 2002 crop years for Hardy Farm, which conducted farming operations in North Dakota and Montana during those years. As security for Stockman Bank's loans, Hardy Farm executed security agreements granting Stockman Bank a security interest in Hardy Farm's property, including its crops, and Stockman Bank filed financing statements for the security agreements. In 2002, Hardy Farm was unable to satisfy its financial obligations to its agricultural suppliers and to Stockman Bank.

[¶ 3] Stockman Bank thereafter sued several entities with claimed interests in Hardy Farm's crops for the 2001 and 2002 years, alleging Stockman Bank had a perfected security interest in the proceeds from Hardy Farm's crops and seeking to determine the parties' respective rights to those proceeds, which had been deposited with the district court. Stockman Bank alleged Betaseed was a Minnesota corporation with a claimed agricultural supplier's lien in the crop proceeds for sugar beet seeds provided to Hardy Farm for the 2002 growing season. Stockman Bank alleged Betaseed did not have a perfected security interest in the crop proceeds and had not otherwise filed a valid agricultural supplier's lien under N.D.C.C. § 35–31–02. Stockman Bank claimed it had a valid and enforceable lien in the crop proceeds that was superior to Betaseed's claimed agricultural supplier's lien.

[¶ 4] Betaseed answered, asserting it had provided Hardy Farm with $43,941 in sugar beet seeds for the 2002 crop and had complied with the requirements of N.D.C.C. § 35–31–02 for a valid agricultural supplier's lien against Hardy Farm for the proceeds from the 2002 crop.

[¶ 5] Both Stockman Bank and Betaseed moved for summary judgment. The district court granted Stockman Bank's motion for summary judgment, concluding Betaseed had not strictly complied with the filing and notice requirements of North Dakota law for an agricultural supplier's lien. The court decided Betaseed's claimed agricultural supplier's lien was invalid and Betaseed was not entitled to any proceeds from the 2002 crop.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 7] We consider the issues raised in this appeal in the posture of summary judgment, which is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that reasonably can be drawn from the undisputed facts, or if the only issues to be resolved are questions of law. *Johnson v. Nodak Mut. Ins. Co.*, 2005 ND 112, ¶ 9, 699 N.W.2d 45. A party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 5, 673 N.W.2d 257. A party resisting a motion for summary judgment cannot merely rely

on the pleadings or unsupported conclusory allegations. *Beckler v. Bismarck Pub. Sch. Dist.*, 2006 ND 58, ¶ 7, 711 N.W.2d 172. A party resisting a motion for summary judgment must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact. *Id.* On appeal, we view the evidence in the light most favorable to the opposing party, and that party must be given the benefit of all favorable inferences. *Hurt v. Freeland*, 1999 ND 12, ¶ 7, 589 N.W.2d 551. Summary judgment, when appropriate, may be rendered against the moving party. *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 435 (N.D. 1995). Whether a district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Johnson*, at ¶ 9.

### III

[¶ 8] The issue raised in this appeal involves the validity of Betaseed's claimed agricultural supplier's lien. Section 35–31–01, N.D.C.C., entitles any person who furnishes seeds used in the production of crops to an agricultural supplier's lien on the crops. An agricultural supplier's lien filed under N.D.C.C. ch. 35–31 is effective from the date the seeds are furnished. N.D.C.C. § 35–31–01. Under N.D.C.C. § 35–31–03, an agricultural supplier's lien obtained under N.D.C.C. ch. 35–31 has priority over all other liens except an agricultural processor's lien filed under N.D.C.C. ch. 35–30. Section 35–31–02, N.D.C.C., outlines the procedure for obtaining an agricultural supplier's lien:

To obtain an agricultural supplier's lien, except an agricultural supplier's lien for furnishing petroleum products, the person entitled to the lien, within one hundred twenty days after the supplies are furnished or the services performed, shall file a verified statement in the office of the recorder of any county in this state or in the office of the secretary of state.... The statement must contain the following information:

1.  The name and address of the person to whom the supplies were furnished.
2.  The name and address of the supplier.
3.  A description of the crops, agricultural products, or livestock and their amount or number, if known, subject to the lien together with a reasonable description, including the county as to the location of the crops, agricultural products, or livestock and the year the crop is to be harvested or was harvested.
4.  A description and value of the supplies and the first date furnished.
5.  The social security number or, in the case of a debtor doing business other than as an individual, the internal revenue service taxpayer identification number of the person to whom the supplies were furnished.

The secretary of state shall prescribe one form that can be used to obtain a lien under this section or gain protection under the central notice system, or both. *Before a supplier's lien is filed, a billing statement for the supplies furnished must include notice to the agricultural producer that if the amount due to the agricultural supplier is not satisfied a lien may be filed.*

(Emphasis added.)

[¶ 9] Here, the parties do not dispute that Hardy Farm ordered sugar beet seeds for the 2002 crop in November 2001; Betaseed furnished the seeds on April 3, 2002; an April 12, 2002, invoice stated the

net amount for the seeds was due November 25, 2002; there was a "return" of seeds on April 23, 2002, and an "exchange" or "replacement" of seeds on April 26, 2002; and Betaseed filed a verified statement on a form prescribed by the secretary of state for an agricultural supplier's lien in the amount of $43,941 with the McKenzie County recorder on June 21, 2002. The parties also do not dispute that Betaseed's verified statement included the requirements of N.D.C.C. § 35–31–02(1)–(5), but before Betaseed's lien was filed, Betaseed had not provided Hardy Farm with a billing statement that included notice to Hardy Farm that if the amount due to Betaseed was not satisfied, a lien may be filed.

[¶ 10] Betaseed argues the district court erred in concluding Betaseed's agricultural supplier's lien was invalid and in deciding Betaseed was not entitled to any proceeds from Hardy Farm's 2002 crop. Betaseed argues it substantially complied with all the statutory filing and notice requirements for an agricultural supplier's lien and its lien was not affected by Betaseed's failure to give Hardy Farm written notice in a billing statement before Betaseed's agricultural supplier's lien was filed. Betaseed claims it substantially complied with the requirements of N.D.C.C. § 35–31–02, because Hardy Farm had actual notice that if Hardy Farm failed to pay the Betaseed bill, Betaseed could file an agricultural supplier's lien and Hardy Farm had encouraged Betaseed to file the lien. Stockman Bank responds Betaseed failed to substantially comply with the statutory notice requirement for an agricultural supplier's lien and Betaseed's lien was invalid. Stockman Bank argues it has a properly perfected lien in the proceeds for the 2002 crop and was entitled to summary judgment on its claim against Betaseed.

[¶ 11] This Court has long held that a seed lien is a statutory lien and cannot be obtained or enforced unless there is substantial compliance with the statute. *Agricultural Bond & Credit Corp. v. Courtenay Farmers' Co-op. Ass'n*, 64 N.D. 253, 264, 251 N.W. 881, 887 (1933); *Huether v. McCaull–Dinsmore Co.*, 52 N.D. 721, 732, 204 N.W. 614, 617 (1925); *Chaffee v. Edinger*, 29 N.D. 537, 541, 151 N.W. 223, 224 (1915); *Lavin v. Bradley*, 1 N.D. 291, 296, 47 N.W. 384, 385 (1890). *See* 51 Am. Jur.2d *Liens* § 56 (2000) (recognizing that, for existence of lien, some courts require strict compliance with statute while other courts hold that substantial compliance is sufficient).

[¶ 12] In granting Stockman Bank summary judgment, the district court stated, "Strict compliance with the filing and notice requirements is required by North Dakota law [and t]hat was not done in this case." The district court's statement reflects an error of law as to the required degree of statutory compliance for a valid seed lien.

[¶ 13] In assessing substantial compliance for a statutory lien, this Court has recognized that whether there has been substantial compliance with the statutory requirements necessitates a consideration of the "real-world situation from which the account arose." *Ask, Inc. v. Wegerle*, 286 N.W.2d 290, 294 (N.D.1979). In *Ask*, this Court also said substantial compliance should not be decided in a vacuum and care should be taken to consider the nature of the business involved. *Id.* at 294–95. In assessing whether there has been substantial compliance with the requirements for a statutory lien, other courts have considered the degree of noncompliance, the underlying policy of the statutory requirement, and the prejudice suffered by the owner of the property or third parties as a result of the noncompliance. *Beneficial Fin. Co., Inc. v. Wegmiller Bender Lumber Co.*, 402 N.E.2d 41, 45 (Ind.Ct.

App.1980); *McGregor Co. v. Heritage*, 291 Or. 420, 631 P.2d 1355, 1357 (1981); *Bell Hardware of Medford, Inc. v. Ed Szoyka Woodworking Co.*, 129 Or.App. 332, 879 P.2d 208, 210 (1994). *See* 51 Am.Jur.2d *Liens*, at § 56.

[¶ 14] Here, the issue involves whether Betaseed substantially complied with the requirements for an agricultural supplier's lien, specifically the statutory language that "[b]efore a supplier's lien is filed, a billing statement for the supplies furnished must include notice to the agricultural producer that if the amount due to the agricultural supplier is not satisfied a lien may be filed."

[¶ 15] We have said our statutory lien laws are remedial and will be liberally construed to effectuate their purpose of protecting those who contribute labor, skill, or materials. *Stockman Bank v. AGSCO*, 2007 ND 26, ¶ 18; *North Dakota Mineral Interests, Inc. v. Berger*, 509 N.W.2d 251, 255 (N.D.1993). Statutory interpretation is a question of law, fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. We presume the legislature intended a just and reasonable result. N.D.C.C. § 1–02–38(3). If the language of a statute is clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. If the language of a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids, including legislative history, to determine the intention of the legislation. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to different, rational meanings. *Amerada Hess Corp. v. State ex rel. Tax Comm.*, 2005 ND 155, ¶ 12, 704 N.W.2d 8.

[¶ 16] The language and structure of the procedure for obtaining an agricultural supplier's lien in N.D.C.C. § 35–31–02 lists five enumerated items of information a filed verified statement "must contain." Two obvious purposes of the filed statement are to provide a mechanism for establishing priorities for validly filed liens and to provide notice of the lien to other suppliers and lienholders and to the producer. In a separate paragraph prefaced by language for a form prescribed by the secretary of state, N.D.C.C. § 35–31–02 also provides that "[b]efore a supplier's lien is filed, a billing statement for the supplies furnished must include notice to the agricultural producer that if the amount due to the agricultural supplier is not satisfied a lien may be filed." The five subsections setting forth the requirements of the filed verified statement do not clearly include language that the filed statement must contain language about the billing statement, and the underlying policy and purpose of the requirement for prefiling notice in a billing statement is not clear. We therefore consider legislative history to ascertain the underlying policy and purpose of that requirement in the context of considering substantial compliance.

[¶ 17] The language about the billing statement was enacted in 1997 as part of amendments to the law for agricultural processor and agricultural supplier liens in N.D.C.C. §§ 35–30–01, 35–30–02, 35–31–01, and 35–31–02. *See* 1997 N.D. Sess. Laws ch. 306. As originally introduced and enacted, N.D.C.C. § 35–31–01 was amended to provide that "[a]n agricultural supplier's lien filed as a security interest created by contract to secure money advanced or loaned for any purposes is not effective to secure a priority over liens filed under section 35–05–01." As originally introduced, the amendment to the procedure for obtaining an agricultural suppli-

er's lien in N.D.C.C. § 35–31–02 included proposed subsection (6), which was prefaced with language that the supplier's filed verified statement must contain the following information, and which provided:

6. In order for an agricultural supplier's lien to be effective and take priority over section 35–05–01 security interests, the person filing the supplier's lien must, within ten days after it is filed, give notice of the filing and provide a copy of the verified statement to any person or firm that has filed a section 35–05–01 security interest or lien against the same growing crops, harvested or to be harvested, during that same year, and to the person to whom the supplies or services were furnished. This notice must be given in person or by certified mail with return receipt.

[¶ 18] The 1997 legislation was introduced by Senator Vern Thompson to address a problem with filing of agricultural processor's liens and agricultural supplier's liens:

Let me give you an example, a farmer in my district got an operating loan from the local bank, to plant the crop last spring. He also signed a line of credit at the local supplier for fertilizer, chemical, fuel, etc. Without his knowledge, an agriculture supplier's lien was filed. He then paid off the supplier's bill. In the fall, he purchased and applied fertilizer for the 1997 growing season. Around December, he hauled in crop to pay off his operating loan from the local bank. Much to his surprise and the bank's, there was a lien on the grain for the 1997 fertilizer. The system needs to be fixed so the local bank can secure it's [sic] loan proceeds for the same year's crop.

What SB 2324 is attempting to do is to make the person or firm filing the lien within 10 days, give notice, to anyone that has filed a security interest or lien against the same growing crops, during the same year. This notice must be given in person or by certified mail with return receipt.

*Hearing on S.B. 2324 Before the Senate Agriculture Comm.,* 55th N.D. Legis. Sess. (Feb. 6, 1997) (written testimony of Senator Vern Thompson).

[¶ 19] As introduced, the 1997 legislation was intended to attach the agricultural supplier's lien to a specific crop year, to provide proper notification to prior perfected security holders, and to provide proper and timely notification to the farmer on whose property the lien was filed. *Id.* (written testimony of DeWayne Streyle, representative of Independent Community Banks of North Dakota).

[¶ 20] During the legislative process, the Senate Agriculture Committee deleted proposed subsection (6) from N.D.C.C. § 35–31–02. *See Hearing on S.B. 2324 Before the Senate Agriculture Comm.,* 55th N.D. Legis. Sess. (Feb. 6, 7, and 13, 1997). The House Agriculture Committee thereafter proposed amending N.D.C.C. § 35–31–02 by adding (1) a clause requiring a copy of the filed verified statement be mailed to the producer and (2) a sentence after the language about the secretary of state's prescribed form stating "[a]t least ten days before filing a lien, the person entitled to the lien shall mail to the agricultural producer a notice of intent to file a lien." *Hearing on S.B. 2324 Before the House Agriculture Comm.,* 55th N.D. Legis. Sess. (March 13 and 20, 1997). That language was intended to provide the farmer with notification. *Id.* (testimony of Representative Eugene Nicholas). The House Agriculture Committee's amendments were ultimately changed in a conference committee to the current language to provide notice in a billing statement as a

matter of fairness to the producer. *See Hearing on S.B. 2324 Before the Agriculture Conference Comm.*, 55th N.D. Legis. Sess. (April 1, 1997) (testimony of Joel Gilbertson from the Independent Banks of North Dakota).

[¶ 21] The language and structure of N.D.C.C. § 35–31–02 and the context of the legislative history for the language about notice in the billing statement indicate a purpose to benefit the producer by providing the producer with notice as a matter of fairness. The structure of the statute and the legislative history also indicate that although the underlying purpose was to provide the producer with notice that a lien may be filed if the supplier's bill was not paid, the supplier's filed statement need not include a reference to notice in the billing statement. Because the notice in the billing statement is not required to be provided to other third parties, those third parties cannot be prejudiced by the supplier's failure to give the producer notice in a billing statement. The underlying purpose of notice in the billing statement is to benefit the producer, and that purpose is satisfied when the producer has actual knowledge that a lien may be filed if the supplier's bill is not paid. We conclude there has been substantial compliance with the prefiling notice requirement when, although there may not be notice in a billing statement, the producer has actual knowledge that a lien for the applicable crop year may be filed.

[¶ 22] Here, it is undisputed that Hardy Farm was experiencing financial difficulty during the 2002 crop season. Jim Hardy, an officer of Hardy Farm, stated in an affidavit that none of Betaseed's billing statements to Hardy Farm contained the prefiling notice that a lien may be filed if Hardy Farm's bill was not paid; however:

Having been a long-time farmer in Montana and North Dakota, I was well aware that if Hardy Farms did not pay its suppliers, the suppliers were certainly free to file an Agricultural Supplier's Lien. Because Hardy Farms had advised many of its suppliers to file the Agricultural Supplier's Lien in the first place, it was not necessary that Hardy Farms be provided with notice in a billing statement as to the ramifications of non payment—we were already well aware of that.

[¶ 23] Although Stockman Bank suggests there may be a factual dispute about when Hardy Farm was aware that a lien may be filed, Stockman Bank's references to the record do not raise a disputed issue of fact about Hardy Farm's knowledge. A party resisting a motion for summary judgment has an obligation to call the court's attention to relevant admissible evidence raising a genuine issue of material fact. *Beckler*, 2006 ND 58, ¶ 7, 711 N.W.2d 172. On this record, we conclude, as a matter of law, Hardy Farm had actual knowledge that a lien may be filed if it did not pay Betaseed for the seed used for the 2002 crop.

[¶ 24] Stockman Bank nevertheless argues Betaseed was not entitled to an agricultural supplier's lien, because the underlying debt was on "fall terms" and was not due until November 25, 2002, approximately five months after the lien was filed, and Betaseed could not demand payment of the account until it matured. We reject Stockman Bank's argument because N.D.C.C. §§ 35–31–01 and 35–31–02, when read together, require the lien to be filed within one hundred twenty days after the supplies are furnished and provide that the lien is effective from the date the supplies are furnished.

[¶ 25] We conclude Betaseed substantially complied with the statutory requirements for an agricultural supplier's lien and its lien is valid.

IV

[¶ 26] We reverse the judgment and remand for proceedings consistent with this opinion.

[¶ 27] GERALD W. VANDEWALLE, C.J., ROBERT O. WEFALD, D.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 28] The Honorable ROBERT O. WEFALD, D.J., sitting in place of CROTHERS, J., disqualified.